Michael L. NEVEL, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 84A04–0403–CR–149.

Court of Appeals of Indiana.

Oct. 14, 2004.

Publication Ordered Nov. 4, 2004.

Robert D. Hepburn, Terre Haute, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Grant H. Carlton, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

OPINION

DARDEN, Judge.

*STATEMENT OF THE CASE*

Michael L. Nevel appeals his convictions, after a jury trial, of auto theft and resisting law enforcement, both as class D felonies.

We affirm in part and remand in part.

*ISSUES*

1.  Whether Nevel's convictions violate state double jeopardy principles.
2.  Whether he is entitled to a new trial because of comments by the prosecutor in closing argument.

*FACTS*

Shortly after 1:00 a.m. on October 1, 2003, Officer Jeff Davis of the Terre Haute Police Department observed a gray four-door Dodge sedan travel past his location "at a high rate of speed," exceeding the "posted speed limit." (Tr. 47, 67). The area was well lighted, and Davis clearly saw the driver of the Dodge,[1] which then "brake[d] hard" and turned. (Tr. 47). Davis, who was in uniform, activated the red and blue lights and siren on his fully marked squad car and pulled it behind the Dodge. The driver did not stop, instead making a series of turns and ending up in an alley. Davis saw the driver slide to the passenger side and exit the Dodge. The driver ran, and the car continued to roll.

Davis announced on his police radio that the driver had fled from him on foot at 15th and Barbour, and described him as a white male with dark hair and wearing a dark shirt. Davis then managed to stop the moving Dodge, which had been left in gear. Davis observed that the plastic shroud of its steering column and the igni-

---

1.  Davis testified that there was no one in the Dodge but the driver.

tion were broken, with pieces lying on the floor, and that there were no keys in the ignition. Using his radio, Davis learned that the Dodge was registered to Delores Roberts, and asked that she be queried about its location. When police contacted Roberts, she indicated her belief that the Dodge was in her driveway, but upon being asked to investigate, she determined that it was missing.

In the meantime, Officers Loudermilk and Sparks had heard Davis' report of the fleeing driver and proceeded to the area. At 16th and Barbour, a block away from where the driver was reported to have fled, they saw Nevel—the only man on foot in the area at 1:15 a.m. and matching the description. The officers took Nevel to the scene, where Davis had remained, and Davis identified Nevel as the man he saw driving the Dodge. Nevel was arrested; a "multi-tool"—which contained a pair of small pliers and screwdrivers—was found in his front pants pocket. (Tr. 110).

The State charged Nevel with auto theft and two counts of resisting law enforcement.[2] Nevel was tried by jury on January 13–14, 2004.

The officers testified to the foregoing. Roberts testified that the Dodge was her car; that she had not given Nevel permission to take the Dodge; and that there had been no damage to the steering column or ignition when she had parked it before it was taken that night.

In the State's initial closing argument, it reviewed the evidence presented and argued that it warranted a finding that Nevel was guilty as charged. Nevel's counsel then argued that various testimony indicated that "too many things just don't fit" and that there was "just not enough there"

to convict. (Tr. 220, 221). In responsive closing argument, the prosecutor opined that defense counsel had stated "a common smoke screen," which was "a tactic used by defense counsel" in an "effort ... to distort the facts" to make them appear "smokey" [sic]. (Tr. 223). The State then asked the jury to "look at what is clear" and "look at the facts." *Id.* Responding to defense counsel's mention of how Nevel had told Loudermilk and Sparks who he was, and had shown them his identification, the prosecutor said,

> As a matter of fact, it's law in the state of Indiana if you're out and you don't have your identification you can be charged with a crime. Now if you bring your identification in you can get out of it.

(Tr. 227–28). There was no objection by Nevel to the prosecutor's remarks.

The jury found Nevel guilty as charged by the State.

## DECISION

### 1. *Dual Convictions*

■ Before addressing Nevel's first argument, we note the statutory definitions of auto theft and resisting law enforcement. Statute defines the offense of class D auto theft as the knowing or intentional exertion of "unauthorized control over the motor vehicle of another person, with intent to deprive the owner of the vehicle's value or use." Ind.Code § 35–43–4–2.5(b). To knowingly or intentionally "flee[] from a law enforcement officer after the officer has, by visible or audible means identified himself and ordered the person to stop" is the offense of resisting law enforcement, a class A misdemeanor. I.C. § 35–44–3–3(a)(3). However, the resisting offense is

---

**2.** One count, alleging that he knowingly fled in a vehicle, was charged as a class D felony pursuant to I.C. § 35–44–3–3(b)(1); the other count of resisting law enforcement simply alleged that he knowingly fled, a class A misdemeanor pursuant to I.C. 35–44–3–3(a)(3).

a class D felony if "the person *uses a vehicle* to commit the offense." I.C. § 35–44–3–3(b)(1) (emphasis added).

Nevel contends that his convictions of both auto theft and resisting law enforcement as a class D felony are impermissible. Nevel reminds us that *Richardson v. State*, 717 N.E.2d 32, 53 (Ind.1999), held that the Indiana Constitution does not permit a conviction of two offenses if "there was a reasonable possibility that the jury used the same evidence to convict the defendant of both." Nevel's Br. at 6. Nevel then argues that the auto theft charge alleged that he stole the Dodge, and the resisting law enforcement charge alleged that he "fled from a police officer while driving" the vehicle. *Id.* Because "the same evidence was used for both offenses," he concludes, "the multiple convictions cannot stand." *Id.* We disagree.

■ *Gross v. State*, 769 N.E.2d 1136, 1138 (Ind.2002), explained how certain multiple convictions do *not* violate Indiana's constitutional prohibition against double jeopardy pursuant to "what has come to be known as the *Richardson* actual evidence test." Specifically, " 'the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense.' " *Id.* (quoting *Spivey v. State,* 761 N.E.2d 831, 833 (Ind.2002)).

To convict Nevel of auto theft, the essential elements which the State was required to prove were that Nevel knowingly exerted unauthorized control over Roberts' vehicle with the intent of depriving her of its value or use. To convict Nevel of resisting law enforcement as a class D felony, the State was required to prove that Nevel knowingly fled from a law enforcement officer after the officer had visibly or audibly identified himself and ordered Nevel to stop and that Nevel was using a vehicle when he did so.

The essential elements proving that Nevel committed auto theft would not necessarily prove that he committed resisting law enforcement as a class D felony. The record demonstrates that the essential elements of theft were established by evidence that Nevel drove the Dodge, *e.g.* when it first passed Davis' squad car, after having obtained possession of the Dodge without Roberts' permission. Further, the elements proving that Nevel committed resisting law enforcement as a class D felony would not necessarily prove that he also had committed auto theft. The essential elements of resisting law enforcement were proven by evidence that Nevel, while driving a vehicle, failed to comply with Davis' order to stop—an order demonstrated by activation of the pursuing squad car's lights and siren. Indisputably, use of a vehicle is an essential element of the resisting offense, but not the use of a vehicle that was obtained without the permission of the owner. Thus, "in neither case did the same evidentiary facts establish all of the essential elements of both offenses." *Spivey,* 761 N.E.2d at 834. Nevel has failed to demonstrate a violation of the Indiana Double Jeopardy Clause under the *Richardson* actual evidence test. *Id.*

■ The State suggests that Nevel's conviction for resisting law enforcement as a class A misdemeanor in addition to his conviction for the class D felony resisting offense may raise double jeopardy concerns, citing *Ratliff v. State,* 741 N.E.2d 424, 435 (Ind.Ct.App.2000). Nevel summarily states that the misdemeanor conviction is "redundant as his fleeing was one

continuous act" of resisting.[3] Nevel's Br. at 7. We agree with the latter, having held that when the defendant's flight from law enforcement was a single, continuous incident, there can be but a single conviction of resisting law enforcement. *Miller v. State*, 726 N.E.2d 349, 352 (Ind.Ct.App. 2000), *aff'd.* 753 N.E.2d 1284, 1286 (Ind. 2001). Therefore, we remand for the trial court to vacate the misdemeanor conviction.

## 2. *Closing Remarks*

■■ Nevel also contends that the prosecutor's remarks (1) about defense counsel's "smoke screen" argument, and (2) that citizens are required to carry identification with them at all times "placed [him] in a position of grave peril to which he should not have been subjected." Nevel's Br. at 10. He asserts that this "warrants a new trial." *Id.* We cannot agree.

■ As noted in FACTS, Nevel made no objection to the prosecutor's remarks at trial. A party's failure to present a contemporaneous trial objection asserting prosecutorial misconduct precludes appellate review of the claim. *Booher v. State*, 773 N.E.2d 814, 817 (Ind.2002). However, such default may be avoided if the prosecutorial misconduct amounts to fundamental error. *Id.* To constitute fundamental error, the prosecutorial misconduct "must 'make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process [and] present an undeniable and substantial potential for harm.'" *Id.* (quoting *Benson v. State*, 762 N.E.2d 748, 756 (Ind.2002)). Hence, a lack of fundamental error is dispositive. *Booher* at 818.

Nevel cites cases in which comments by the prosecutor that characterize defense arguments as being a smokescreen have been disapproved and found improper but not to rise to the level of reversible error. He argues that we must "put a stop to" such improper comments by prosecutors. Nevel's Br. at 9. We agree—and we caution the prosecutor to be mindful of this—that there may be a point at which such comments cross the line, but we do not believe that this is the case where such has occurred.

■ Ours is an adversarial process, and comments of counsel are not evidence. Thus, we believe that on a case-by-case basis, the prosecutor may characterize the defense's evidence as "smoke and mirrors" if such is warranted. However, this is not what happened here. Rather, the prosecutor commented that it is a common defense tactic (or procedure commonly used by defense counsel) to distort the facts. We admonish counsel for such remarks. We believe such comments to have been improper, and in a more marginal case such improper comments could tip the balance unfairly, thereby justifying a reversal of a conviction.

Although the prosecutor did improperly refer to the defense's argument as an effort to blur the facts, it then asked the jury to focus on the facts and the evidence. Thereafter, it reviewed various evidence that had been presented, and it concluded by asking the jury to find Nevel guilty "after you look at the evidence." (Tr. 230). Further, the trial court preliminarily instructed the jury that counsel would be making final arguments and that these

> final arguments are not evidence. The attorneys are permitted to characterize the evidence, discuss the law and attempt to persuade you to a particular verdict. You may accept or reject those arguments as you see fit.

3. The State's theory at trial was that the class D felony offense was committed when Nevel failed to stop the vehicle after being signaled to do so, and the class A misdemeanor offense was committed when he fled on foot from the stopped vehicle.

(App. 45). In addition, the trial court's final instructions reminded the jury that statements "made by the attorneys are not evidence." (App. 64). Based upon the foregoing, we do not find the brief reference to a smokescreen to be fundamental error.

As to the reference to a statutory requirement to carry identification, Indiana law does require an individual operating a motor vehicle to be licensed, *see* I.C. § 9–24–1–1, and that the individual "have the ... license in the individual's immediate possession when driving or operating a motor vehicle." I.C. § 9–24–1–3. Further, it is a class C misdemeanor to refuse to provide either "name, address, and date of birth; or driver's license, if in the person's possession; to a law enforcement officer who has stopped the person for an infraction or ordinance violation." I.C. § 34–28–5–3.5. But if Nevel had indeed been merely a pedestrian who had not been driving the speeding and stolen Dodge, then he was not subject to these statutes. Nevertheless, even if the statement did arguably misstate the law, the trial court had instructed the jury as to the applicable law. Therefore, the remark would not constitute prosecutorial misconduct warranting reversal. *See Baker v. State*, 747 N.E.2d 633, 636 (Ind.Ct.App. 2001), *trans. denied* ("argument that prosecutor misstated the law of abandonment during closing argument" not reversible error because the trial court had instructed the jury that comments of counsel were not evidence and had instructed the jury on law applicable to case). Moreover, as already noted, Nevel did not object. We do not find this perhaps inartful statement by the prosecutor to have deprived Nevel of a fair trial so as to be found fundamental error. *See Booher*, 773 N.E.2d at 818.

We affirm Nevel's convictions for auto theft and resisting law enforcement, both as class D felonies. We remand for the trial court to vacate the misdemeanor conviction.

BAKER, J., and FRIEDLANDER, J., concur.

### *ORDER*

On October 14, 2004, the court handed down its opinion on this appeal marked Memorandum Decision, Not for Publication. The appellant, by counsel, has filed a Motion to Publish Decision. The Appellant states that the decision clarifies a rule of law, specifically, that fleeing in a vehicle and then fleeing on foot is one continuous act of fleeing, and clarifies a rule of law regarding prosecutorial misconduct. The Appellant asks the Court to publish the opinion for this appeal.

Having considered the matter, the Court FINDS AND ORDERS AS FOLLOWS:

1. The Appellant's Motion to Publish Decision is GRANTED and this Court's opinion heretofore handed down in this cause on October 14, 2004 marked Memorandum Decision, Not for Publication is now ORDERED PUBLISHED.