v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0411–JV–967.

Court of Appeals of Indiana.

June 7, 2005.

Danielle L. Gregory, Indianapolis, for Appellant.

Steve Carter, Attorney General of Indiana, Stephen Tesmer, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

A.E. appeals a true finding and his resulting eighteen-month commitment to the Department of Correction following his guilty plea. We affirm in part and remand in part.

### Issues

A.E. raises three issues for review, which we restate as the following:

I. Whether a juvenile, who is ordered committed for a fixed period to the Department of Correction, is entitled to credit time for pre-sentence detention;

II. Whether the court was within its discretion when it ordered A.E. to become a ward of the Department of Correction for eighteen months; and

III. Whether the State committed prosecutorial misconduct, resulting in fundamental error, by arguing on behalf of a victim who did not attend the dispositional hearing.

### Facts and Procedural History

According to the factual basis, on June 28, 2004, fifteen-year-old A.E. and a friend were on the south side of Indianapolis when they decided to rob a man near a gas station. Brandishing knives, A.E. and his friend approached Ronald Morgan and demanded money. Morgan complied. During the robbery, A.E. or his friend cut Morgan with a knife. A.E. was arrested that day.

On June 30, 2004, the court approved the State's filing of a petition[1] alleging that A.E. committed delinquent acts that would constitute robbery, a class B felony, and resisting law enforcement, a class A misdemeanor, if committed by an adult. On July 20, 2004, A.E. signed an agreement in which he admitted the robbery offense in exchange for the State dismissing the resisting law enforcement charge. A.E. and the State were free to argue for

---

1. Within the petition, the State cited Indiana Code Sections 31–30–1–1, 31–37–1–2, 35–42–5–1, and 35–44–3–3.

an appropriate disposition with a cap of twenty-four months.

On October 4, 2004, the court accepted the plea agreement, entered a true finding, and ordered an eighteen-month commitment to the Department of Correction. In addition, the court ordered A.E. to complete anger control classes, drug/alcohol counseling, individual counseling, and a vocational and/or GED program.

## Discussion and Decision

### I. Credit Required for Juvenile's Detention Before Determinate Sentence Ordered

■ A.E. asserts that the court should have given him ninety-nine days' credit against his eighteen-month determinate sentence for his detention from the date of arrest through the date of his dispositional hearing. For support, he cites *C.T.S. v. State*, 781 N.E.2d 1193, 1202, 1204 (Ind.Ct. App.2003), *trans. denied*. The State disagrees with *C.T.S.* and instead relies upon *Matter of Tina T.*, 579 N.E.2d 48, 61 (Ind. 1991), for the proposition that there is no need for credit time in the juvenile context. The State contends that absent a specific legislative provision for credit time, the trial court was correct in not awarding any time.

In *C.T.S.*, a panel of this court concluded that the lower court abused its discretion when it detained a juvenile for over four months during the pendency of proceedings. 781 N.E.2d at 1200. The panel explained its reasoning:

> There is ample evidence in the record demonstrating that C.T.S.'s parents were willing to go to great lengths so that C.T.S. could be released to their care while the proceedings were pending. Mother employed a nanny who would be available to supervise C.T.S. while Mother and Stepfather were at work. Also, Stepfather indicated that he was willing to take a leave of absence from work to be with C.T.S. at all times. Given the willingness of C.T.S.'s parents to provide adult supervision of C.T.S. at all times, which became evident to the trial court after the November 21, 2001 pretrial hearing, a less restrictive alternative, such as home detention, would have likely ensured C.T.S.'s appearance for subsequent proceedings and negated the need to detain C.T.S. for reasons of his protection or that of the community. Under these facts and circumstances, the trial court erred when it continued C.T.S.'s detention after the November 21, 2001 pretrial hearing.

*Id.* In restating its conclusion, the panel then noted,

> It is unclear from the record before us whether C.T.S. was given credit towards his recommended twelve-month commitment to the Department of Correction for that four-month period that he was detained. Therefore, we remand this case to the trial court to clarify its dispositional order to reflect that C.T.S. will be given credit for that period of detention against his recommended period of commitment.

*Id.* at 1204.

We agree that C.T.S. should have been credited for his pre-trial detention and likewise conclude that credit time should have been granted to A.E. in the present case. In reaching this conclusion, we distinguish *Tina T.*, which was decided prior to the enactment of the determinate sentencing statutory provisions of the juvenile code.[2] In *Tina T.*, our supreme court stated,

> credit.

**2.** We also note that *Tina T.* involved good time credit rather than pre-trial detention

there is no need for good time credit in the juvenile context. Unlike the criminal justice system, where a defendant serves a finite sentence and can anticipate release upon a day certain, a ward of the juvenile court remains under the court's continuing jurisdiction until he reaches the age of majority, the court discharges the ward in the exercise of its discretion, or guardianship is awarded by the court to the Department of Corrections. I.C. 31–6–2–3. Rather than a determinate term of imprisonment which can be shortened by good time credit, the continuous judicial oversight of a ward under the jurisdiction of the juvenile court extends over a variety of settings and can be terminated at any point at which the court determines that it is no longer necessary or appropriate. Even if the ward is committed to Boys or Girls School and guardianship is awarded to the Department of Corrections, appellees themselves point out that such commitment does not necessarily extend until the juvenile reaches the age of majority, but may be terminated upon the determination of the DOC that a less restrictive placement has become appropriate. Accumulating a specific number of days for good time served in order to earn an earlier release from incarceration simply has no applicability here.

579 N.E.2d at 61–62.

In 1997, our legislature clarified, "the juvenile court's jurisdiction over a delinquent child ... continues until: (1) the child becomes twenty-one (21) years of age, unless the court discharges the child ... at an earlier time; or (2) guardianship of the child is awarded to the department

of correction." Ind.Code § 31–30–2–1(a). That same year, our legislature enacted the following provision:

(a) This section applies if a child is a delinquent child under IC 31–37–1.

(b) After a juvenile court makes a determination under IC 5–2–12–4, *the juvenile court may*, in addition to an order under section 6 of this chapter, and *if the child:*

(1) *is at least thirteen (13) years of age and less than sixteen (16) years of age; and*

(2) *committed an act that, if committed by an adult, would be:*

(A) murder (IC 35–42–1–1);

(B) kidnapping (IC 35–42–3–2);

(C) rape (IC 35–42–4–1);

(D) criminal deviate conduct (IC 35–42–4–2); or

(E) *robbery (IC 35–42–5–1) if the robbery was committed while armed with a deadly weapon or if the robbery resulted in bodily injury or serious bodily injury;*

*order wardship of the child to the department of correction for a fixed period that is not longer than the date the child becomes eighteen (18) years of age,* subject to IC 11–10–2–10.

Ind.Code § 31–37–19–9 (emphases added). Notably, "a determination under Ind.Code § 5–2–12–4 is *not* required before a juvenile court may order wardship of a delinquent child to the DOC for a determinate period, if the child meets the criteria set out in Ind.Code §§ 31–37–19–9(b)(1)–(2)." *B.K.C. v. State,* 781 N.E.2d 1157, 1167 (Ind.Ct.App.2003) (emphasis added).[3]

Here, the court specifically cited Indiana Code Sections 31–37–19–9 and 35–42–5–1

**3.** To "give effect to the apparent intent of the legislature and to avoid a construction that would be an absurdity," the *B.K.C.* court construed Indiana Code Section 31–37–19–9 "in

such a way as to ignore the words: 'After a juvenile court makes a determination under IC 5–2–12–4.'" *B.K.C.,* 781 N.E.2d at 1167.

and ordered that A.E. "be committed to [the] Department of Correction for a determina[te] sentence of 18 months." Appellant's App. at 9. By ordering such a sentence, the court was making clear that A.E. would not be subject to the continuous judicial oversight of the juvenile court. Rather, the juvenile court was relinquishing its jurisdiction, making A.E. a ward of the Department of Correction, and ordering him to serve a "finite sentence"—one from which he could "anticipate release upon a day certain." *Cf. Tina T.*, 579 N.E.2d at 61–62. That being the situation, A.E.'s sentence is strikingly similar to that of a defendant in the criminal justice system. Consequently, the logic behind *Tina T.'s* rule disallowing good time credit in juvenile cases does not apply to A.E.'s particular case.

Indeed, it makes even less sense to deny a juvenile credit time under such circumstances when we consider that had A.E. been waived to adult court and sentenced to the Department of Correction, he would have been granted credit for time served. *See* Ind.Code § 35–38–3–2(b)(4) (providing that a trial court's judgment of conviction must include "the amount of credit, including credit for time spent in confinement before sentencing"); *see also* Ind.Code § 35–50–6–3. Denying credit time to a juvenile who remains in juvenile court but receives a determinate sentence to be served at the Department of Correction would appear to create an unequal burden on children, thereby implicitly granting a special privilege or immunity to adults.

This arguably raises disparate treatment issues.[4] It would also seem inconsistent with the "policy of this State and the purpose of our juvenile code," which is to "ensure that children within the juvenile justice system are treated as persons in need of care, protection, treatment, and rehabilitation." *In re K.G.*, 808 N.E.2d 631, 637 (Ind.2004) (citing Ind.Code § 31–10–2–1(5)). Denying credit for time served also would run counter to the recent trend toward awarding credit for time served in certain circumstances—even absent statute.[5] *See Purcell v. State*, 721 N.E.2d 220, 224 n. 6 (Ind.1999) ("Absent legislative direction, we believe that a defendant is only entitled to credit toward sentence for pre-trial time served in a prison, jail or other facility which imposes substantially similar restrictions upon personal liberty."); *see also Martin v. State*, 774 N.E.2d 43, 45 (Ind.2002) (applying amendments retroactively in order to carry out purpose of providing credit for time served on home detention as a condition of probation).

For all of the above reasons, we conclude that A.E., having been ordered to the Department of Correction for a fixed period under Indiana Code Section 31–37–19–9, should have been awarded credit for the days he was detained beginning upon the date of his arrest and continuing through the date of his dispositional hearing. Accordingly, we remand this case with instructions to award ninety-nine days of credit to A.E.[6]

---

4.  *See* Ind. Const. Art. 1, § 23.

5.  We acknowledge that the legislature has not yet specifically spoken on whether a juvenile in A.E.'s situation should receive credit for time served.

6.  In reaching our conclusion, we note the recent opinion of *J.D. v. State*, 826 N.E.2d 146, 146 (Ind.Ct.App.2005), *pet. for trans. filed*

*May 25, 2005,* in which a panel of this court affirmed the denial of a juvenile's request for "time-served credit for his pre-sentence confinement." The *J.D.* panel stated that *C.T.S.* "involved an extraordinary period of months awaiting disposition, more akin to the constitutional right of speedy trial" and thus J.D. "may not rely upon *C.T.S.'s* unusual remand order." *Id.* at 147. We respectfully disagree with *J.D.*

## II. Eighteen–Month Commitment to Department of Correction Was Within Discretion

■ A.E. next argues that his eighteen-month determinate sentence is punitive and does not further the rehabilitative goals of the juvenile justice system. He maintains that the trial court abused its discretion because several less restrictive placement options were available.

■ The choice of a specific disposition for a delinquent child is within the discretion of the trial court, subject to the statutory considerations of the welfare of the child, the safety of the community, and a statutory policy of favoring the least harsh disposition. *A.M.R. v. State*, 741 N.E.2d 727, 729 (Ind.Ct.App.2000). We may overturn the trial court's disposition order only if we find that the trial court has abused its discretion. *A.D. v. State*, 736 N.E.2d 1274, 1276 (Ind.Ct.App.2000). An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *E.H. v. State*, 764 N.E.2d 681, 684 (Ind.Ct.App.2002), *trans. denied.*

Our supreme court has explained the nature of the juvenile justice system as follows:

> The nature of the juvenile process is rehabilitation and aid to the juvenile to direct his behavior so that he will not later become a criminal. For this reason the statutory scheme of dealing with minors is vastly different than that directed to an adult who commits a crime. Juvenile judges have a variety of placement choices for juveniles who have delinquency problems, ranging from a private home in the community, a licensed foster home, a local juvenile detention center, to State institutions such as the Indiana Boys School and Indiana Girls

> School. None of these commitments are considered sentences. A child can become a juvenile delinquent by committing acts that would not be a violation of the law if committed by an adult, such as incorrigibility, refusal to attend public school, and running away from home. A child can also become a delinquent by committing acts that would be a crime if committed by an adult. In the juvenile area, no distinction is made between these two categories. When a juvenile is found to be delinquent, a program is attempted to deter him from going further in that direction in the hope that he can straighten out his life before the stigma of criminal conviction and the resultant detriment to society is realized. In contrast, when an adult is convicted of a crime, the conviction is a stigma that follows him through life, creating many roadblocks to rehabilitation. In addition to the general stigma of being an "ex-con," or a felon, the conviction subjects him to being found a habitual criminal if he later commits additional felonies, and affects his credibility as a witness in future trials. The Legislature purposely designed the procedures of juvenile determinations so that these problems are not visited on those found to be juvenile delinquents in a juvenile court.

*Jordan v. State*, 512 N.E.2d 407, 408–09 (Ind.1987).

Moreover, the following factors must be considered when entering a dispositional decree:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
> (1) is:
>    (A) in the least restrictive (most family like) and most appropriate setting available; and

(B) close to the parents' home, consistent with the best interest and special needs of the child;

(2) least interferes with family autonomy;

(3) is least disruptive of family life;

(4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and

(5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

Ind.Code § 31–37–18–6.

Here, the court provided an extremely detailed explanation of its disposition:

This Court has considered the pre-dispositional report, the pre-dispositional memorandum prepared by the sentencing consultant on behalf of the Public Defender Agency, and also, Dr. Aleksic's psych eval. This Court has also considered the constraints within, within which it works. In particular, Indiana Code Section 31–37–18–6. This Court has also considered this file in its entirety, the, Respondent before it, and all those connected with him. This Court has considered that he has been able to maintain a high level while at the Delaware Youth Center, and while downstairs here at the Juvenile Detention Facility. And this Court has also considered the nature of the actions that [A.E.] took on that day. And this Court has considered how that affects all of us. This Court finds remarkable, the following: The inappropriate and at times, toxic home environment that the Respondent has been subjected to. I have considered the placements that the, that counsel for Respondent, in the pre-disposition memorandum it has put forth. But [A.E.'s grandmother's] ability to provide supervision is suspect. I appreciate also that her husband who has acted inappropriately in this Court Room, is no longer living in the household, but I believe that gentleman, will at some point, have interaction with [A.E.], and I find that unacceptable. Regarding his highest level that he has attained and maintained while in the facility, I find it remarkable that [A.E.] can maintain a high level while in the facility. He can follow those rules. He can walk with his shoulder against the wall. He can walk with his hands behind his back to such an extent that this, that the detention facility sees fit to place him in the Delaware Youth Center, and he can maintain a high level while there. And I find that he has chosen to do well, knowingly, consciously, and as I read the psych eval., he has the ability to knowingly and consciously make those decisions, yet he can't stop from running up to an old man. He can do well in the detention facility, but he can't put the knife back in his pocket. He can do well at the detention facility, yet he chooses to rob an old man. I find that remarkable. This Court has always held the position and the firm belief that a desire to hold young people accountable for their actions, does not equate to being punitive. I know on the outside, some people can feel that way, but wanting to hold a young child responsible for their actions, is not punitive. It is a necessary aspect of life. This Court has also held a firm belief, time and time again, that Boys School and rehabilitation are not mutually exclusive. [A.E.] sits before me today, not someone who has gone to the local Shoe Carnival and put a pair of shoes on and tried to walk out. He sits before me today, trying to rob someone ma'am, your age or perhaps older. He sits before me to day, a violent young man. I notice in the pre-dispositional report, a week before, he was shot. He has seen people get shot.

He has lived and been marinated in a toxic environment. And now he comes before me having taken this violent, this violent action. I have considered all of the following, including the fact that this is his first referral. And that he has not been offered services through this Court system. This Court believes that there are times when commitment to a suitable public institution, is in the best interest of the juvenile. In this particular case, I find that it's not just in his best interest, it's in the best interest of every member of society. [A.E.] must know that if you take this action, the level of accountability, and the rehabilitation necessary, are mammoth. I have considered least restrictive alternatives, and indeed, the law allows me to do any number of things. A least restrictive alternative would be for me to believe that after upon talking with him for an hour, Dr. Aleksic in his review, and everyone's belief that he's really accepted responsibility and he really feels bad and he'll never do this again, it is theoretically possible for me to merely close the case out. That is the least restrictive alternative, isn't it? And no one would doubt that the least restrictive thing I could do is just close it all out and say, I'm so please[d] son, you've learned your lesson. I don't think that's happened. Indiana Code Section 31–37–18–6 provides, that I make that least restrictive and most family-like setting available for him, when I make a finding that it's in his best interest, and consistent with the safety of the community. I find that neither of those are present, therefore, this Court will award guard-

ianship to the Department of Corrections. In making that recommendation, it will be for a determina[te] period of 18 months. While you are there, I will recommend that you receive educational counseling so you don't fall further behind in your studies. You inability to follow rules at school has resulted in your expulsion, and I'm sorry, your suspension on a couple of occasions. I'm also going to order that you obtain substance abuse counseling for an untreated drug problem. I'm also going to order that you participate in any other individual counseling you feel is necessary so that when you are released from the Department of Corrections, you will come out a different person. That is what you deserve and that is what society deserves also. There are counseling programs. There are, there are mentors. There are therapists. There are [sic] a plethora of programs available for you through the Department of Corrections, and there, this Court feels and hopes, that you will become rehabilitated.

Tr. at 38–41.

Our review of the court's thoughtful[7] disposition leads to the conclusion that A.E.'s eighteen-month determinate sentence is not punitive in nature and does further the rehabilitative goals of the juvenile justice system. A.E. committed a serious offense, robbery as a class B felony if committed by an adult, and the trial court had a responsibility to act. The trial court determined that A.E. should attend anger control classes, drug/alcohol counseling, individual counseling, and a vocational

---

7. Contrary to A.E.'s argument, the court did consider placement at A.E.'s grandmother's home, but was concerned about the environment, level of supervision, negative influences, and lack of readily available services. As for the psychological evaluation by Dr. Aleksic, the court did consider it along with numerous other factors. As with a mitigating factor, the court was not required to give the report the same weight as A.E. would have liked.

and/or GED program. Appellant's App. at 9. Accordingly, the trial court ordered wardship of A.E. to the Department of Correction for a determinate sentence of eighteen months. The trial court's disposition is clearly authorized by statute for the crime that A.E. committed. Moreover, as explained by the court, a short term of confinement can serve many functions, not all of them being punitive in nature. *Madaras v. State*, 425 N.E.2d 670, 672 (Ind. Ct.App.1981). In some instances, confinement may be one of the most effective rehabilitative techniques available. *Id.* "A delinquent child's first exposure to the consequences he will face should he continue to break the law may indeed be the best treatment available in helping a young person readjust his values and priorities in life." *Id.* Accordingly, we conclude that the trial court acted within the law and the bounds of its discretion when it determined that an eighteen-month period of commitment was the best and least restrictive alternative for A.E. under the circumstances. *See B.K.C.*, 781 N.E.2d at 1170–72 (affirming eighteen-month determinate sentence for delinquent act that would constitute robbery if committed by adult); *see also M.B. v. State*, 815 N.E.2d 210 (Ind.Ct. App.2004) (affirming twelve-month determinate sentence for delinquent act that would constitute battery if committed by adult).

### III. Prosecutorial Conduct Not Fundamental Error

■ Finally, A.E. contends that the State committed prosecutorial misconduct resulting in fundamental error when it argued facts not in evidence. Specifically, A.E. faults the State for, after deciding not to introduce any evidence, noting both Morgan's age and his fear of coming to court and facing A.E. Although A.E. failed to object to the prosecutor's comments during the dispositional hearing, he now asserts that the comments placed him in a position of grave peril for sentencing purposes.

■ When reviewing a charge of prosecutorial misconduct, first, we consider whether the prosecutor engaged in misconduct; second, we consider all the circumstances of the case to determine whether such misconduct placed the defendant in a position of grave peril to which he should not have been subjected. *Ratliff v. State*, 741 N.E.2d 424, 428–29 (Ind.Ct. App.2000), *trans. denied.* The latter is measured not by the degree of impropriety of the misconduct, but by the probable persuasive effect of the misconduct on the factfinder's decision and whether there were repeated examples of misconduct that would evince a deliberate attempt to unfairly prejudice the defendant. *Lampitok v. State*, 817 N.E.2d 630, 637 (Ind.Ct. App.2004), *trans. denied.*

■ A party's failure to present a contemporaneous trial objection asserting prosecutorial misconduct precludes appellate review of the claim. *Booher v. State*, 773 N.E.2d 814, 817 (Ind.2002). However, such default may be avoided if the prosecutorial misconduct amounts to fundamental error. *Id.* To constitute fundamental error, the prosecutorial misconduct must make a fair disposition impossible or constitute clearly blatant violations of basic and elementary principles of due process and present an undeniable and substantial potential for harm. *Nevel v. State*, 818 N.E.2d 1, 5 (Ind.Ct.App.2004). Hence, a lack of fundamental error is dispositive. *Booher*, 773 N.E.2d at 818.

In light of the signed plea agreement in which A.E. admitted the robbery allegations, we are not surprised that the State introduced no additional evidence. As for the prosecuting attorney's remarks about Morgan's age and his fear of coming to court, we stress that these comments oc-

curred during the *argument* stage of a sentencing proceeding in front of a judge, rather than a jury. We also note; "it is apparent that the hearsay rule does not apply in juvenile dispositional hearings." *C.C. v. State*, 826 N.E.2d 106, 111 (Ind.Ct. App.2005). Moreover, we cannot imagine that the court was surprised to hear that a victim chose not to face the person who robbed him at knifepoint. A.E. has not demonstrated how the State's comment about Morgan's fear affected the ultimate disposition of his case. Indeed, within its extensive sentencing explanation, the court made no mention of the victim's fear. The court did focus to some degree on Morgan's age.[8] However, it was merely one of several factors that the court considered in its three-and-one-half-page explanation of the disposition. Viewed in context, the challenged remarks did not make a fair disposition impossible, constitute clearly blatant violations of basic and elementary principles of due process, or present an undeniable and substantial potential for harm. Thus, A.E. has not shown fundamental error.

Affirmed in part and remanded in part.

DARDEN, J., concurs.

MATHIAS, J., dissents with opinion.

MATHIAS, Judge, dissenting.

I respectfully dissent. I agree with the majority's conclusion that determinate sentences under Indiana Code section 31–37–19–9 are distinguishable from *In re Tina T.'s* statement concerning indeterminate sentences because determinate sentences have a finite time period from which to subtract time-served credit. However, the General Assembly has made no provision for juvenile time-served credit, and the unique background of juvenile cases makes the judicial creation of such a provision inappropriate.

Juvenile detention theory and practice pending adjudication is substantially different from adult detention theory and practice pending trial. Detained juveniles are often placed in rehabilitative programs pending adjudication, in an attempt to avoid a determinate sentence and to complete rehabilitation. Adults, on the other hand, are detained solely with public safety in mind and are removed from society pending trial in almost the precise fashion they are likely to be removed if convicted after trial.

In the case at bar, the trial court had the discretion to sentence A.E. to a determinate sentence of as much as twenty-four months. The trial court was presumably aware of A.E.'s pre-sentence detention when it sentenced A.E. Accordingly, the trial court in the exercise of its discretion essentially determined A.E. needed an *additional* eighteen months of rehabilitation. Had the trial court desired to give A.E. time-served credit, it would simply have ordered A.E. to serve a twenty-one month and nine-day sentence.[9]

---

8. The State referred to Morgan as a sixty-year-old man. The court simply used the term "old." *Cf.* Ind.Code § 35–38–1–7.1 (considerations in imposing sentence, which notes that in a criminal context, a court may consider the fact that a victim is at least sixty-five years of age).

9. The majority's observation that A.E. would have received time-served credit had he been waived to adult court is not without significance. However, had A.E. been remanded to adult court and the sentencing judge also concluded A.E. was in need of an additional eighteen months of rehabilitation, the sentencing judge simply would have sentenced A.E. to a twenty-four month sentence—as the trial court would have done in the case at bar had it believed A.E. had a right to time-served credit. The majority's hypothetical of waiver to adult court also reinforces the differences between juvenile and adult pre-trial detention

The majority relies upon *C.T.S. v. State*, 781 N.E.2d 1193, 1198 (Ind.Ct.App.2003), *trans. denied.* *C.T.S.* is distinguishable from the case at bar because the propriety of C.T.S.'s time-served credit was not litigated in *C.T.S.* In *C.T.S.*, the State asserted the trial court properly detained C.T.S. prior to trial and the issue of C.T.S.'s sentence was moot; the State never asserted it was improper to award time-served credit or raised *In re Tina T.* Br. of Appellee at 11–12, *C.T.S.* (No. 44A02–0206–CR–439).

Because (1) juvenile detention and sentencing are unique; (2) the General Assembly has made no provision for juvenile time-served credit; (3) the State properly argues against the propriety of time-served credit in the case at bar; and (4) the trial court clearly had the discretion to determine A.E. was in need of an *additional* eighteen months rehabilitation, I respectfully dissent.

and is consistent with the gravamen attendant to such waiver decision.