## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 14 2015, 9:01 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE

Khalid M. Jackson-Bey
Michigan City, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Cynthia L. Ploughe
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Khalid M. Jackson-Bey, <br> *Appellant-Petitioner,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Respondent.* | October 14, 2015 <br><br> Court of Appeals Case No. 45A03-1311-PC-507 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable Natalie Bokota, Judge <br><br> Trial Court Cause No. 45G04-1106-PC-7 |

**Mathias, Judge.**

[1]     Kalid Malik Jackson-Bey ("Jackson-Bey") filed a petition for post-conviction relief in Lake Superior Court, and the court denied the petition. Jackson-Bey

appeals and presents six issues for our review, which we consolidate and restate as: (1) whether the post-conviction court properly concluded that Jackson-Bey was not denied the effective assistance of trial counsel; and (2) whether the State presented evidence sufficient to support Jackson-Bey's convictions.

We affirm.

## Facts and Procedural History

The facts underlying Jackson-Bey's convictions were set forth in our decision on direct appeal as follows:

> On the morning of January 6, 2008, Jorge Molina was outside his house working on his car when a black man approached him quickly. The man displayed a gun and said he needed money. Specifically, he said "if he didn't get any [money], he would shoot [Molina] right there." The man then put the gun straight in Molina's face. Molina said he did not have any money on him because his wallet was inside the house, where his wife and daughter were sleeping. The man then held his gun on Molina, pulled on his coat, and led him into the house. Once the man left the house, Molina called 911. Molina identified the man from a photo array and at trial as Jackson-Bey.
>
> Before Molina identified Jackson-Bey from the photo array, on January 8, 2008, Darrel Kilbourne was waiting for the bus outside his East Chicago HUD apartment when he realized he forgot something inside. As Kilbourne started to unlock the door to the apartment building, someone came from behind him and stuck a gun in his ribs, demanded money, and said, "I will shoot you." Kilbourne said he did not have any money and gave him the change from his pocket.

Edward Serna, Kilbourne's roommate, heard a commotion outside and proceeded to the door. A black man pushed Kilbourne inside and pointed the gun at Serna's head. The man asked Serna where he lived, and Serna responded upstairs. Once they were inside the apartment, Serna was able to get a good look at the man's face. When the man asked for Serna's money, he said that he did not have any, so the man asked for Kilbourne's money. Still not successful in obtaining any money, the man "pistol whipped" Serna on the side of his head. The man then ordered the men to crawl on the floor and put the gun to the side of Serna's head. At this point, Kilbourne reached into his pocket and said that he had some money after all. However, the man was still upset and threatened to shoot them. Serna begged for his life. The man then ordered Kilbourne and Serna back downstairs and out of the building. Unknown to the man, a police car was in front of the building because someone had called 911.

East Chicago Police Department Officer Hector Rosario was dispatched to the apartment building for a disturbance call. He observed a black male exiting the building. When Officer Rosario summoned the man, he took off running down the alley. Officer Rosario chased him. He lost sight of the man between some houses while additional officers drove to the other side of the block. Eventually, Officer Rosario located the man underneath a front porch and pulled him out. He also located a handgun underneath the porch. Before placing the man inside a patrol car to be transported to the police station, Officer Rosario patted him down and found a bag of marijuana. Serna saw the man at the patrol car and knew that the officers had found the right guy. Serna later went to the police station and identified Jackson-Bey from a photo array.

*Jackson-Bey v. State*, No. 45A04-0911-CR-646, 2010 WL 2885966, slip op. at 2-4

(Ind. Ct. App. July 23, 2010), *trans. denied*.

[4]     As a result, the State charged Jackson-Bey as follows: with regard to the January 6 incident involving Molina, Class B felony robbery and Class B felony criminal confinement; and with regard to the January 8 incident involving Kilbourne and Serna, Class B felony robbery, two counts of Class B felony criminal confinement, Class C felony battery, Class A misdemeanor resisting law enforcement, and Class A misdemeanor possession of marijuana. *See id.*, slip op. at 4.

[5]     The trial court bifurcated the charges based on the January 6 and 8 incidents. With regard to the January 6 incident, one jury found Jackson-Bey guilty of criminal confinement but not guilty of robbery. A separate jury found Jackson-Bey guilty as charged with regard to the January 8 incident.

[6]     In sentencing Jackson-Bey, the trial court noted that Jackson-Bey had been convicted of a November 2007 murder and robbery in Cause No. 45G04-0810-MR-8 ("Cause No. MR-8"), after he was in custody for the January 2008 crimes in this case. In Cause No. MR-8, Jackson-Bey was sentenced to an aggregate term of sixty-five years. *See Jackson-Bey v. State*, No. 45A03-0908-CR-365, 2010 WL 909092 (Ind. Ct. App. Mar. 15, 2010). The trial court in the current case sentenced Jackson-Bey to ten years on each of his four Class B felonies, four years on his Class C felony, and one year on each of his two Class A misdemeanors. The court ordered Jackson-Bey's ten-year sentence for the robbery of Kilbourne to be served consecutive to his sixty-five-year sentence for murder and robbery in Cause No. MR-8. The court ordered Jackson-Bey's one-year sentences for the Class A misdemeanors to be served concurrently but the

remainder of his sentences to be served consecutively, for an aggregate term of forty-four years in this case.

[7] On direct appeal, Jackson-Bey argued that the evidence was insufficient to establish his identity as the culprit and that the trial court abused its discretion in ordering one of his sentences to be served consecutively to the sixty-five-year sentence in Cause No. MR-8. A panel of this court held that sufficient evidence established Jackson-Bey's identity as the culprit and that the trial court did not abuse its discretion, thereby affirming Jackson-Bey's convictions and sentence. *See Jackson-Bey*, No. 45A04-0911-CR-646, slip op. at 8-9.

[8] Jackson-Bey filed a pro se petition for post-conviction relief on June 2, 2011, and an amended petition on October 15, 2012. The post-conviction court held evidentiary hearings on Jackson-Bey's petition on December 19, 2012, and March 15, 2013. Both parties then submitted proposed findings of fact and conclusions of law to the court. The post-conviction court entered findings of fact and conclusions of law on October 29, 2013, denying Jackson-Bey's petition. Jackson-Bey filed a notice of appeal on November 22, 2013. After numerous procedural delays, this case was finally fully briefed and submitted to this court.

## Post-Conviction Standard of Review

[9] In addressing Jackson-Bey's claims, it bears repeating that post-conviction proceedings are not "super appeals" through which convicted persons can raise issues they failed to raise at trial or on direct appeal. *McCary v. State*, 761 N.E.2d

389, 391 (Ind. 2002). Post-conviction proceedings instead afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal. *Davidson v. State*, 763 N.E.2d 441, 443 (Ind. 2002). The post-conviction petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. *Henley v. State*, 881 N.E.2d 639, 643 (Ind. 2008). Thus, on appeal from the denial of post-conviction relief, the petitioner appeals from a negative judgment. *Id.* To prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite than that reached by the post-conviction court. *Id.* at 643-44.

[10] Where, as here, the post-conviction court makes findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), we must determine if the court's findings are sufficient to support its judgment. *Graham v. State*, 941 N.E.2d 1091, 1096 (Ind. Ct. App. 2011), *aff'd on reh'g*, 947 N.E.2d 962. Although we do not defer to the post-conviction court's legal conclusions, we review the post-conviction court's factual findings under a clearly erroneous standard. *Id.* Accordingly, we will not reweigh the evidence or judge the credibility of witnesses, and we will consider only the probative evidence and reasonable inferences flowing therefrom that support the post-conviction court's decision. *Id.*

## Ineffective Assistance of Trial Counsel

[11] Our supreme court has summarized the law regarding claims of ineffective assistance of trial counsel as follows:

A defendant claiming a violation of the right to effective assistance of counsel must establish the two components set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel's representation fell below an objective standard of reasonableness, and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. The Strickland Court recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. The two prongs of the Strickland test are separate and independent inquiries. Thus, [i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.

*Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001) (citations and quotations omitted). Jackson-Bey argues that his trial counsel was ineffective for failing to do several things. We address each in turn.

## A. Failure to Make an Opening Statement

[12] Jackson-Bey first argues that his trial counsel was constitutionally ineffective for failing to make an opening statement to the jury. Jackson-Bey's trial counsel testified at the post-conviction hearing that he could not remember any particular reason for not making an opening statement at either of Jackson-Bey's trials. He did say, however, that he usually chose not to make opening statements if the State's case was fairly strong.

[13] Jackson-Bey now argues that there could be no legitimate reason to choose not to make an opening statement. However, our supreme court has long held that "[i]t is by no means unusual for criminal defense counsel to waive opening argument for a wide variety of reasons." *Roche v. State*, 690 N.E.2d 1115, 1124 (Ind. 1997). Therefore, the court has "regularly held that the decision not to make an opening statement is a matter of trial strategy and will not support an ineffective assistance of counsel claim." *Id.*

[14] Thus, Jackson-Bey has not demonstrated that the post-conviction court clearly erred in determining that Jackson-Bey's trial counsel was not ineffective for failing to make an opening statement.

## B. Failure to Depose Witnesses

[15] Jackson-Bey next argues that his trial counsel was ineffective for failing to depose certain witnesses. Jackson-Bey correctly notes that a criminal defendant has a constitutional right to confront the witnesses against him. *See* Ind. Const. Art. 1, Sec. 13(a); U.S. Const. amend. VI. However, this does not translate into

an absolute obligation upon counsel to depose witnesses. Indeed, our supreme court has held that "[c]ounsel's failure to interview or depose State's witnesses does not, standing alone, show deficient performance. The question is what additional information may have been gained from further investigation and how the absence of that information prejudiced his case." *Williams v. State*, 771 N.E.2d 70, 74 (Ind. 2002) (citing *Williams v. State*, 724 N.E.2d 1070, 1076 (Ind. 2000)).

[16]     Here, Jackson-Bey makes the conclusory argument that deposing the witnesses prior to trial would have assisted his trial counsel during cross-examination. However, Jackson-Bey refers us to nothing in the record that would suggest that his trial counsel's cross-examination of the witnesses was inadequate. Moreover, trial counsel testified at the post-conviction hearing that he does not always depose witnesses and that his choice to do so is a matter of strategy, as deposing a witness could preserve testimony unfavorable to his client that could then be used at trial. Therefore, we cannot say that the post-conviction court clearly erred in concluding that trial counsel was not ineffective for failing to depose certain witnesses.

### C. Failure to Suppress Jackson-Bey's Confession

[17]     Jackson-Bey next faults his trial counsel for failing to object to and suppress the incriminating statement that Jackson-Bey gave to the police. Jackson-Bey argues that his counsel knew that the voluntariness of his confession was an important issue and that counsel was also aware that his confession was "false and coerced." Appellant's Br. p. 8. Jackson-Bey contends that, had his

confession been challenged, it would have been suppressed, dealing a "serious, probably fatal blow to the State[']s case." *Id*.

[18] The problem with Jackson-Bey's argument, however, is that he refers to no evidence suggesting that his confession was false or coerced. Although the State bears the burden of establishing the voluntariness of a confession at trial, *see Pruitt v. State*, 834 N.E.2d 90, 114-15 (Ind. 2005), Jackson-Bey, as the post-conviction petitioner, bore the burden of proving his claims for relief. *See Henley*, 881 N.E.2d at 643.

[19] Jackson-Bey's trial counsel testified at the post-conviction hearing that he did not recall Jackson-Bey ever telling him that the confession was coerced, and when Jackson-Bey himself testified at the hearing, he offered no testimony to support his contention that his confession was coerced. Accordingly, the post-conviction court properly concluded that Jackson-Bey had not established that his counsel was ineffective for failing to suppress Jackson-Bey's statement to the police.

### D. Failure to Object to Prosecutor's Allegedly False Statements

[20] Jackson-Bey next argues that his trial counsel was ineffective for failing to object to certain statements made by the prosecuting attorney regarding a plea offer the State sent to Jackson-Bey. Specifically, the prosecuting attorney stated that the State offered a plea with consecutive sentencing and that Jackson-Bey's trial counsel asked that this statement be reduced to writing, which the

prosecuting attorney did. However, the prosecuting attorney subsequently stated that he did not reduce the plea to writing or draft a plea. *Id*. at 10.

[21] Jackson-Bey now claims that his trial counsel should have objected to this statement because his trial counsel forwarded to him a letter from the State containing a plea offer. Thus, Jackson-Bey argues that the prosecuting attorney's statement that the plea was never reduced to writing constituted "false testimony" to which his trial counsel should have objected.

[22] We first note that the statements of the prosecuting attorney, even if false, were not testimony. *See Nevel v. State*, 818 N.E.2d 1, 5 (Ind. Ct. App. 2004) (noting that statements of counsel are not evidence). More importantly, it does not appear that the statements by the prosecuting attorney were false.

[23] Jackson-Bey's trial counsel discussed a possible plea deal with the prosecuting attorney. At the request of Jackson-Bey's trial counsel, this plea offer was reduced to writing on September 24, 2008, in a letter sent by the State to Jackson-Bey's trial counsel, which stated in relevant part:

> I am writing to follow up on our phone conversation today regarding [Jackson-Bey]. The terms of the plea the State has offered are as follows: plead to Counts I and II, ten (10) years on each count to run concurrent with each other and consecutive to the sentence in [Cause No. MR-08]. We are set for trial on October 5, 2009. Hopefully, we can dispose of this matter on Monday, September 28, 2009. After that date, the plea [offer] will no longer be open.

PCR Ex. Vol., Petitioner's Ex. 4. That same day, Jackson-Bey's trial counsel took this letter to Jackson-Bey in jail, along with a letter stating in relevant part:

> I came to see you today to tell you about the State's offer. Enclosed is a copy of the letter I got today from the prosecutor.
>
> If you accept this offer, you will have to admit in court that you did rob the victims in both counts, and you will have to sign a statement that you did rob the victims.
>
> If you accept this offer, sign your name below that you admit robbing the victims, and that you will accept the State's offer.

*Id.*, Petitioner's Ex. 3.[1]

[24] Although the copy of the letter submitted as evidence by Jackson-Bey indicates that he signed the plea offer on September 28, 2009, his trial counsel testified at the post-conviction hearing that Jackson-Bey never indicated to him that he was willing to accept the State's plea offer. Instead, on the morning of the first trial on October 5, 2009, Jackson-Bey told the trial court that he was willing to accept the State's plea offer. At this time, the prosecuting attorney told the trial court that the plea offer had expired.

[25] In this context, it appears that the prosecuting attorney's statements that Jackson-Bey now complains about were simply recounting to the trial court that although the plea offer had been reduced to writing, a formal plea agreement

---

[1] The original text of this letter is in all capitals. For the sake of readability, we have used standard capitalization in our quotation.

was never reduced to writing. At most, the prosecuting attorney's statements were unclear, not false. Therefore, we cannot fault Jackson-Bey's trial counsel for failing to object to these statements.[2]

*E. Failure to Investigate or Present Alibi Defense*

Jackson-Bey's last claim of ineffective assistance of trial counsel is that his counsel was ineffective for failing to properly investigate and present an alibi defense. Jackson-Bey contends that, had his counsel properly investigated his case, he would have discovered the existence of an alibi defense.

At the post-conviction hearing, however, Jackson-Bey never established that he informed his trial counsel of the possibility of an alibi defense. Instead, he merely established that his trial counsel knew of a woman named Cherish Christian ("Christian"). Further, Christian's affidavit, which was submitted into evidence by Jackson-Bey at the post-conviction hearing, does not actually establish an alibi for Jackson-Bey. The affidavit states that Christian received a telephone call from Jackson-Bey on January 6, 2008 "at 9:00 am while he was in Chicago[.]" Ex. Vol., Petitioner's Ex. 2.[3] This affidavit, however, does not explain how Christian knew that Jackson-Bey was in Chicago when he called.

---

[2] To the extent that Jackson-Bey's argument is that he did intend to accept the plea offer, his trial counsel's testimony contradicts this claim, and the post-conviction court was well within its discretion to believe the testimony of trial counsel.

[3] As noted by the State, Christian's affidavit is typewritten except for a portion which appears to have been whited-out and overwritten in pen "at 9:00 am while he was in Chicago[.]" *Id*. This apparent alteration does not instill confidence in the integrity of the affidavit.

Also, the post-conviction court, as the trier of fact, was under no obligation to credit Christian's affidavit. Moreover, the affidavit does nothing to establish that Jackson-Bey informed his trial counsel of the possibility that Christian was an alibi witness.

[28] Under these facts and circumstances, the post-conviction court did not clearly err in determining that there was "no credible evidence that Jackson-Bey was in Chicago, Illinois or with Ms. Christian at 9:00 a.m. on January 6, 2008." Appellant's App. p. 7. Thus, his trial counsel was not ineffective for failing to present an alibi defense.

## II. Free-Standing Claim of Error

[29] Amidst his claims of ineffective assistance of trial counsel, Jackson-Bey also argues that the State failed to introduce evidence that he was the perpetrator of the crimes, claiming that neither victim made an in-court identification of Jackson-Bey as the culprit. Jackson-Bey does not frame this question as one of the ineffective assistance of trial or appellate counsel; he simply claims that the State failed to prove that he committed the crimes.

[30] This claim, however, may not be presented as a free-standing claim of error in a post-conviction proceeding. It has long been held that most free-standing claims of error are not available in a post-conviction proceeding because of the doctrines of waiver and res judicata. *Timberlake*, 753 N.E.2d at 597-98. That is, if an issue was known and available but not raised on direct appeal, the issue is "waived," or more accurately, procedurally foreclosed; if an issue was raised

and decided on direct appeal, it is res judicata. *Stephenson v. State*, 864 N.E.2d 1022, 1028 (Ind. 2007) (citing *Timberlake*, 753 N.E.2d at 597). Even free-standing claims of fundamental error may not be addressed in post-conviction proceedings. *See id.* at 1029.

[31] Here, Jackson-Bey did present a claim of insufficient evidence on direct appeal, and this court held that sufficient evidence established that Jackson-Bey was the individual who committed the crimes in question. *See Jackson-Bey*, No. 45A04-0911-CR-646, slip op. at 8-9. This is now res judicata and cannot be relitigated. *See Stephenson*, 864 N.E.2d at 1028 (citing *Timberlake*, 753 N.E.2d at 597).

## Conclusion

[32] The post-conviction court did not clearly err in concluding that Jackson-Bey was not denied the effective assistance of trial counsel, and Jackson-Bey's freestanding claim of insufficient evidence is barred by the doctrine of res judicata and may not be relitigated in an appeal from the denial of a petition for post-conviction relief.

[33] Affirmed.

Baker, J., and Bailey, J., concur.