James E. ROGERS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 84A01–1104–CR–148.

Court of Appeals of Indiana.

Nov. 30, 2011.

---

**6**

Mark Everett Watson, Terre Haute, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Karl M. Scharnberg, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, James E. Rogers (Rogers), appeals his conviction and sentence for failure to register as a sex or violent offender, a Class D felony, Ind. Code § 11–8–8–17(a)(5), as well as his sentences for theft, a Class D felony, I.C. § 35–43–4–2(a), and receiving stolen property, a Class D felony, I.C. § 35–43–4–2(b).

We affirm.

### ISSUES

Rogers raises two issues on appeal, which we restate as follows:

(1) Whether his conviction pursuant to a guilty plea violated the Indiana constitutional prohibition against *ex post facto* laws; and

(2) Whether the trial court's sentence was appropriate in light of the nature of Rogers' offense and his character.

### FACTS AND PROCEDURAL HISTORY

Rogers was convicted of second degree sexual assault in Wisconsin in 1991. As a result of his conviction, Rogers registered in Wisconsin as a sex offender. Following his registration, Rogers moved to Indiana. The exact date of Rogers' move is not identified, but it is apparent from the record that he moved sometime between 1993 and 1996. Subsequent to his move, Rogers registered as a sex offender in Indiana. He last registered with the Vigo County Sheriff's Office on November 4, 2009, at which point he listed an address in Terre Haute, Indiana as his residence.

On May 29, 2009, Officer J. Kenworthy (Officer Kenworthy) of the Vigo County Sheriff's Department was dispatched to a Walmart in Vigo County regarding a theft. Upon arrival, he was informed that Rogers and another man named Michael Branch had placed several pairs of jeans, shrimp, steak, ribs, ham, beer, sausage, and other items into empty Walmart bags and attempted to leave the store without paying for the items. When confronted, Rogers admitted that he "was a 'dumb ass' for allowing Mike to talk him into this stupid, stupid thing." (Appellant's App. p. 158). On June 2, 2009, the State filed an Information under cause number 84D01–0906–FD–1624 (Cause 1624) charging Rogers with theft as a Class D felony, I.C. § 35–43–4–2(a).

On November 16, 2009, Rogers was again arrested and incarcerated in the Vigo County Jail in another cause. Chief Matron Patty Bauer is the custodian of records for registered sex offenders in Vigo County, and she explained to Rogers while he was incarcerated that he was required to update his sex offender registration in Indiana within seven days of his release from jail. Rogers signed a document dated November 24, 2009, that explained this statutory requirement and then was released from incarceration on December 2, 2009.

On December 28, 2009, Detective Paul Hartzler (Officer Hartzler) of the Vigo

County Sheriff's Department visited Rogers' last registered address but did not find Rogers there. He spoke with Betty Darkis who informed him that Rogers had lived with her previously, but that she had not seen him since November 2009, prior to Rogers' incarceration. As a result, on December 30, 2009, the State filed an Information charging Rogers in cause number 84D01–0912–FD–4071 (Cause 4071) with failure to register as a sex or violent offender, a Class D felony, I.C. § 11–8–8–17(a)(5).

On June 21, 2010, the State also filed an Information charging Rogers in cause number 84D01–1006–FD–02060 (Cause 2060) with receiving stolen property, a Class D felony, I.C. § 35–43–4–2(b). This charge was founded on allegations that Rogers had sold a stolen chrome Bianchi mountain bike valued at $1,000 to a pawn shop in exchange for $75.

On October 6, 2010, Rogers entered into a plea agreement with the State. Under the terms of the plea agreement, Rogers pled guilty to Causes 4071, 1624, and 2060 as Class D felonies, and admitted to two probation violations. In exchange, the State dismissed charges in four other causes and recommended that the balance of Rogers' probation in two causes be terminated unsatisfactorily. The parties did not establish an agreement for sentencing in Causes 4071, 1624, and 2060. On January 27, 2011, the trial court held a sentencing hearing and sentenced Rogers to three years respectively for Causes 4071, 1624, and 2060, with sentences to run consecutively.

Rogers now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Ex Post Facto Claim*

■ Rogers first argues that his conviction for failing to register as a sex offender is an improper *ex post facto* application of sex offender registration requirements in violation of the Indiana Constitution. The Indiana Constitution contains a prohibition against *ex post facto* laws. Ind. Const. art. I, § 24. An *ex post facto* law is one that "imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Wallace v. State*, 905 N.E.2d 371, 377 (Ind.2009), *reh'g denied*. Rogers contends that the sex offender registration laws are *ex post facto* as applied to him because he was not required to register as a sex offender in Indiana when he committed the underlying crime of second degree sexual assault in 1991.

■ It is well-settled in Indiana that a person who pleads guilty cannot challenge the propriety of the resulting conviction on direct appeal; he or she is limited on direct appeal to contesting the merits of a trial court's sentencing decision, and then only where the sentence is not fixed in the plea agreement. *Alvey v. State*, 911 N.E.2d 1248, 1249 (Ind.2009). "This is one of the consequences of pleading guilty. After all, '[a] defendant's plea of guilty is [ ] not merely a procedural event that forecloses the necessity of trial and triggers the imposition of a sentence. It also, and more importantly, conclusively establishes the fact of guilt, a prerequisite in Indiana for the imposition of criminal punishment.'" *Id.* (quoting *Norris v. State*, 896 N.E.2d 1149, 1152 (Ind.2008)). We have recognized that defendants who elect to enter plea agreements in return for favorable outcomes "give up a plethora of substantive claims and procedural rights." *Creech v. State*, 887 N.E.2d 73, 74 (Ind. 2008).

■ However, Rogers raises a constitutional claim to challenge the propriety of

his conviction. Thus, we need to analyze whether an *ex post facto* constitutional claim is an exception to the general rule that a defendant may not challenge a conviction pursuant to a guilty plea on direct appeal. We conclude that it is not. We evaluated the issue in *Douglas* and concluded that Douglas had not waived his *ex post facto* claim by pleading guilty. *Douglas v. State*, 878 N.E.2d 873, 878 (Ind.Ct. App.2007). We noted, though, that our conclusion was based on a "narrow set of circumstances." *Id.* Specifically, Douglas had not pled guilty pursuant to a plea agreement, so he had not received a benefit such as a reduced sentence or the dismissal of other charges. *Id.* In addition, he had already raised his *ex post facto* claim prior to the entry of the guilty plea, so there were fully briefed arguments from both parties regarding the claim, and there was a record upon which this court could base its review. *Id.* None of these circumstances are present in the instant case.

Rogers did not plead guilty without recompense as Douglas did. Rogers entered into a plea agreement with the State and received substantial benefits for doing so. In exchange for Rogers' guilty plea, the State agreed to dismiss four charges against him, two of which were felony charges and two of which were misdemeanor charges. Also, Rogers failed to raise his claim before entering into his guilty plea, and the record before us is sparse. As such, we do not know when Rogers moved to Indiana, whether he continued to maintain his registration obligations immediately, or how he came to register in Indiana at all.

Instead, we find that Rogers' circumstances fit into the broader general rule that a defendant who pleads guilty pursuant to a plea agreement waives potential claims with respect to the propriety of his conviction on direct appeal. In *Games*, the supreme court examined a similar constitutional claim and held that Games was not allowed to file a double jeopardy claim on appeal after he had entered into a plea agreement regarding the underlying offenses at trial. *Games v. State*, 743 N.E.2d 1132, 1135 (Ind.2001). The supreme court noted that "retaining a benefit while relieving oneself of the burden of the plea agreement 'would operate as a fraud upon the court.'" *Id.* While relating to a different constitutional claim, we find the supreme court's reasoning persuasive as applied to Rogers' constitutional claim. Based on the *Games* court's holding and the circumstances underlying Rogers' plea agreement, we decline to create an exception to the rule that a defendant who pleads guilty pursuant to a plea agreement may not challenge his conviction on direct appeal. We conclude that Rogers waived his *ex post facto* claim when he entered into a plea agreement with the State.

## II. *Sentencing*

### A. *Mitigating Factors*

Next, Rogers challenges the trial court's sentences for his three convictions. First, Rogers argues that the trial court abused its discretion because it should have considered his guilty plea, his remorse, and the non-violent nature of his offenses as mitigating factors. Previously, trial courts were required to properly weigh mitigating and aggravating factors during sentencing. *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind.2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind.2007). Now, under the advisory sentencing scheme, trial courts no longer have such an obligation. *Id.* Instead, "once the trial court has entered a sentencing statement, which may or may not include the existence of aggravating and mitigating factors, it may then 'impose any sentence that is ... authorized by statute; and ... permissible under the Constitution of the State of Indiana.'"

*Id.; see also* I.C. § 35–38–1–7.1(d) (stating that a court may impose any sentence authorized by statute "regardless of the presence or absence of aggravating circumstances or mitigating circumstances.").

A trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Heyen v. State*, 936 N.E.2d 294, 299 (Ind.Ct.App. 2010), *trans. denied.* In order to show that a trial court failed to identify or find a mitigating factor, the defendant must establish that the mitigating evidence is both significant and clearly supported by the record. *Anglemyer*, 868 N.E.2d at 493. Although a failure to find mitigating circumstances clearly supported by the record may imply that the trial court improperly overlooked them, although the trial court "is not obligated to explain why it has chosen not to find mitigating circumstances. Likewise, the court is not obligated to accept the defendant's argument as to what constitutes a mitigating factor." *Id.*

With regards to his decision to enter into a plea agreement, Rogers characterizes his actions as a benevolent attempt to save the State the trouble of conducting multiple additional trials for the charges that were otherwise dismissed. However, Rogers conveniently overlooks a significant factor—that he also saved himself trouble and the potential for a longer incarceration. As a result, we conclude that Rogers received a significant benefit from the plea agreement, and the trial court did not abuse its discretion in failing to consider the agreement as a mitigating factor.

With respect to the non-violent nature of Rogers' offenses, he alleges that: "[t]here is no evidence despite his previous conviction for [second] [d]egree [s]exual [m]isconduct in 1991 that [he] had engaged in any similar activity since which posed a risk to anyone." (Appellant's Br. p. 13). We do not find any credibility in this statement because our review of the record shows that Rogers' criminal history since 1991 is littered with violent crimes, including multiple battery convictions. Moreover, it is apparent that the trial court considered the nature of Rogers' crimes and his remorse. At the sentencing hearing, the following exchange occurred between Rogers' lawyer and the trial court:

> [DEFENSE COUNSEL]: And just for purpose of the record, Your Honor, whether or not the crimes threaten[ ] serious harm to personal property, you are saying that's not a mitigating factor. . . .
>
> [TRIAL COURT]: No, I don't buy his story as to [all] of these excuses and. . .
>
> [DEFENSE COUNSEL]: I'm just trying to make that clear for the record.
>
> [TRIAL COURT]: Yeah. No, I don't find any mitigators and if th[ere] were, they would be way outweighed by that criminal record.

(Sentencing Transcript p. 27). Because Rogers mentioned the nature of his offenses during the sentencing hearing, this shows that the trial court considered the issue and made a specific choice not to find it a mitigating factor. As stated above, a trial court is not obligated to explain why it has not chosen to find mitigating circumstances or to accept the defendant's argument as to what constitutes a mitigating factor. *Anglemyer*, 868 N.E.2d at 493. Similarly, with respect to Rogers' remorse, the trial court specifically stated that it did not find all of his stories credible. Accordingly, we find that the trial court did not abuse its discretion in deciding that Rogers' crimes and his remorse were not mitigating factors.

### B. *Nature of the Offense and Character of the Offender*

 Next, Rogers argues that the trial court's sentence is inappropriate in light of the nature of his offense and his character. Under Indiana Appellate Rule 7(B), this court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender. *Childress v. State*, 848 N.E.2d 1073, 1079–80 (Ind.2006). Although this court is not required to use "great restraint," we nevertheless exercise deference to a trial court's sentencing decision, both because Appellate Rule 7(B) requires that we give "due consideration" to that decision and because we recognize the unique perspective a trial court has when making decisions. *Stewart v. State*, 866 N.E.2d 858, 865–66 (Ind.Ct.App.2007). The "principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind.2008). In addition, the defendant bears the burden of persuading this court that his sentence is inappropriate. *Childress*, 848 N.E.2d at 1080.

Here, the trial court imposed a three year sentence for each of Rogers' three Class D felony charges. Indiana Code section 35–50–2–7 authorizes a six-month to three year sentence for a Class D felony, with an advisory sentence of one and one-half years. Thus, the trial court imposed the maximum sentence allowed under the statute for each Count.

With respect to the nature of his offenses, Rogers argues that he did register as a sex offender at one point in time but moved out and simply forgot to report his change of address over a 26 day period. He claims that he did not intend to mislead authorities regarding his whereabouts. Rogers does not make any arguments, however, concerning his convictions for theft and receiving stolen property.

We cannot agree that the nature of his offense justifies a reduced sentence. Before Rogers left incarceration, Chief Matron Patty Bauer specifically notified him that he would have to register as a sex offender upon his release. Then, when he was released, Rogers failed to register for 26 days—almost four times the length of the statutory seven-day time limit. It is impossible to predict how long Rogers would have failed to register if the State had not filed an Information charging him with failure to register as a sex offender.

In addition, turning to Rogers' character, the trial court noted,

> [Rogers] has in the presentence report five pages of criminal record, four full pages and one about a third of a page[,] that involved felonies, misdemeanors, crimes of violence, bail jumping, [ ], probation violations, [ ], the whole [gamut] of [ ] drug and alcohol offenses, confinement, robbery, the whole [gamut] of criminal behavior . . . .

(Sentencing Tr. p. 24). Based on this extensive criminal history, we cannot find that the trial court inappropriately sentenced Rogers in light of his character. Accordingly, we conclude that the trial court did not abuse its discretion in sentencing Rogers.

### CONCLUSION

Based on the foregoing, we conclude that (1) Rogers waived his claim that his conviction violated the Indiana constitutional prohibition against *ex post facto*

laws; and (2) the trial court properly sentenced Rogers.

Affirmed.

NAJAM, J., and MAY, J., concur.