**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**WILLIAM S. FRANKEL, IV**
Wilkinson Goeller Modesitt
Wilkinson & Drummy, LLP
Terre Haute, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

FILED
Oct 12 2012, 9:26 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STEVEN POWERS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 84A01-1201-CR-29 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VIGO SUPERIOR COURT
The Honorable David R. Bolk, Judge
Cause No. 84D03-1006-FB-1917

**October 12, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

STATEMENT OF THE CASE

Appellant-Defendant, Steven Powers (Powers), appeals his sentence for Count I, neglect of a dependent resulting in serious bodily injury, a Class B felony, Ind. Code §§ 35-46-1-4(a)(1), -(b)(2).

We affirm.

ISSUES

Powers raises two issues on appeal, which we restate as follows:

(1) Whether the trial court abused its discretion by failing to consider mitigating factors when it sentenced him; and

(2) Whether the trial court's sentence was appropriate in light of his character and the nature of the offense.

FACTS AND PROCEDURAL HISTORY

Powers' daughter, B.P., was born on March 24, 2010. After her birth, B.P. lived with Powers, her mother, and Powers' grandmother. Powers also had two other children, although it is not clear from the record when those children were born and whether they also lived with Powers. On May 31, 2010, when B.P. was approximately ten weeks old, she suffered a leg injury while Powers was taking care of her. When B.P.'s mother returned home from work that night, she changed B.P.'s diaper and noticed that B.P. was not using her left leg, the leg was swollen, and B.P. screamed when the leg was moved. B.P.'s mother and Powers took B.P. to a hospital in Terre Haute, Indiana and B.P. was subsequently transferred to Riley Hospital in Indianapolis for treatment.

On June 1, 2010, Doctor Ralph Hicks (Dr. Hicks), a specialist in child abuse pediatrics, examined B.P. and diagnosed her with an oblique fracture of the femur. At the sentencing hearing, Dr. Hicks explained that an oblique fracture is one that goes all the way through the bone at a downward angle and is likely caused by a "bending and twisting force applied to the [] bone." (Transcript p. 37). Dr. Hicks asked B.P.'s parents to explain how she got the injury, but they could not identify a clear cause of the fracture. Based on B.P.'s age, the type of injury, and the lack of explanation from the parents, Dr. Hicks concluded that the circumstances were "indicative of [or] extremely suspicious for a non-accidental or inflicted injury." (Tr. p. 34).

Dr. Hicks later learned that when Powers spoke with the police, he gave four different accounts of how B.P. had been injured. Initially, Powers told the police that he was holding B.P. in bed on his chest and that she rolled off onto the floor. In his second account, he said that he rolled over in bed onto B.P.'s leg. Next, he said that B.P.'s mother was holding her in bed and sat up abruptly. Finally, he said that he was carrying B.P. and tripped and fell on top of her.

Before B.P. was discharged from the hospital, Dr. Hicks scheduled her for a follow-up orthopedic appointment and follow-up x-rays. When Dr. Hicks examined B.P.'s follow-up x-rays, he found evidence that B.P. had three healing posterior rib fractures. These additional injuries strengthened Dr. Hicks' belief that B.P.'s injuries were not accidental.

On June 7, 2010, the State charged Powers with Count I, neglect of a dependent resulting in serious bodily injury, a Class B felony, I.C. §§ 35-46-1-4(a)(1), -(b)(2); and Count II, neglect of a dependent, a Class D felony, I.C. § 35-46-1-4(a)(3). Powers posted a real estate bond, and the trial court ordered as a condition of his bond that he could not have contact with B.P. On July 29, 2011, the State filed a petition to revoke Powers' real estate bond and to set a cash bond because Powers had violated the no-contact order. The trial court revoked Powers' real estate bond, set a cash bond in the amount of $30,000, and remanded Powers to custody. The State also charged Powers with invasion of privacy in Cause Number 84D03-1107-CM-2372 for knowingly violating the no-contact order.

As a result of this incident, the Department of Child Services opened a case concerning B.P. in July 2011 and requested that Powers participate in parenting classes, individual therapy, and anger management classes. Powers had already started anger management classes and individual therapy in November of 2010, but he continued to participate in those treatments and also completed the parenting class. A licensed social worker who worked with Powers during his anger management classes and individual therapy sessions testified that he was consistent in attending their appointments.

On October 3, 2011, Powers pled guilty to Count I, neglect of a dependent resulting in serious bodily injury, a Class B felony. In exchange, the State requested the trial court to dismiss the neglect of a dependent and invasion of privacy charges against Powers and agreed to cap his sentence at ten years. On December 22, 2011, the trial

4

court held a sentencing hearing and sentenced Powers to eight years of incarceration in the Indiana Department of Correction.  The trial court found as aggravating factors that: (1) the victim in the case was less than twelve years of age; (2) Powers had violated the no-contact order; and (3) Powers was in the position of having the care, custody, or control of the victim.  The trial court found as mitigating factors that:  (1) Powers was young; (2) Powers had essentially no criminal history; and (3) Powers pled guilty to the crime.

Powers now appeals.  Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Mitigating Factors*

First, Powers argues that the trial court abused its discretion in sentencing him because it should have considered as mitigating factors that the crime was the result of circumstances unlikely to recur; he was likely to respond affirmatively to probation or short term imprisonment; and his character and attitude indicate that he is unlikely to commit another crime.

Our standard for reviewing a sentence is well established.  *Sims v. State,* 585 N.E.2d 271, 272 (Ind. 1992).  Sentencing is conducted within the discretion of the trial court and will be reversed only upon a showing of an abuse of that discretion.  *Saddler v. State,* 953 N.E.2d 1220, 1222 (Ind. Ct. App. 2011).  A trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances before the court.  *Rogers v. State,* 958 N.E.2d 4, 9 (Ind. Ct. App. 2011).

5

Pursuant to the advisory sentencing scheme, trial courts no longer have an obligation to weigh mitigating and aggravating factors. *Anglemyer v. State,* 868 N.E.2d 482, 491 (Ind. 2007), *clarified on reh'g,* 875 N.E.2d 218 (Ind. 2007). Instead, "once the trial court has entered a sentencing statement, which may or may not include the existence of aggravating and mitigating factors, it may then 'impose any sentence that is . . . authorized by statute; and . . . permissible under the Constitution of the State of Indiana.'" *Id.* In order to show that a trial court failed to identify or find a mitigating factor, the defendant must establish that the mitigating evidence is both significant and clearly supported by the record. *Anglemyer,* 868 N.E.2d at 493. Although a failure to find mitigating circumstances clearly supported by the record may imply that the trial court improperly overlooked them, though, the trial court "is not obligated to explain why it has chosen not to find mitigating circumstances. Likewise, the trial court is not obligated to accept the defendant's argument as to what constitutes a mitigating factor." *Id.*

Here, Powers' counsel discussed Powers' likelihood of committing another offense at length during his closing statement. Among other factors, he highlighted the fact that Powers had completed a parenting class, obtained and maintained employment, and consistently participated in individual therapy sessions and anger management classes. He also highlighted the testimony of Powers' neighbor, who testified that Powers had a healthy relationship with the neighborhood children.

In response to this argument, the trial court stated:

I know that it's a statutory mitigating factor that the offense is unlikely to [re]occur. I just always have a difficult time with that. No one has a crystal ball and it's kind of hard for me to sit here and say it's clear this isn't [going to] happen again[.] [] Mr. Powers has [] several family members who are coming here and supporting him and, that's always obviously helpful because there are a number of times when there's no one in the courtroom. So he at least has some support there, but as far as proving that the offense was unlikely to occur again, I'm declining to find that as a mitigator. . . . And you didn't help yourself out by being out [] and just directly violating the [c]ourt's [o]rder. I mean, as far as being able to predict future behavior Mr. Powers, that's pretty, I mean, that's one [] of the indicators I have. You were out and what happened? You're in the house taking care of the child that I ordered you not to have any contact with.

(Tr. pp. 92-95). In light of this statement, it is clear that the trial court did consider Powers' request to include his likelihood of committing another crime and whether the circumstances were likely to recur as mitigators and determined that Powers' violation of the no-contact order indicated that there was a likelihood that he would commit a future offense. As the trial court is "not obligated to accept the defendant's argument as to what constitutes a mitigating factor," and the evidence supports its decision, we cannot conclude that the trial court abused its discretion in this regard. *See Anglemyer,* 868 N.E.2d at 493.

Powers' counsel also argued that Powers would benefit from a short sentence or probation. However, as above, we conclude that in light of Powers' violation of the no-contact order, the evidence in support of this mitigating factor was not significant. Also, Powers' counsel specifically requested a short sentence, so it is clear that the trial court did not overlook the issue.

II. *Character of Offender and Nature of Offense*

7

Next, Powers argues that the trial court's sentence was inappropriate in light of his character and the nature of his offense. Under Indiana Appellate Rule 7(B), this court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the court finds that the sentence is inappropriate in light of the character of the offender and the nature of the offense. *Childress v. State,* 848 N.E.2d 1073, 1079-80 (Ind. 2006). Although this court is not required to use "great restraint," we nevertheless exercise deference to a trial court's sentencing decision, both because Appellate Rule 7(B) requires that we give "due consideration" to that decision and because we recognize the unique perspective a trial court has when making decisions. *Stewart v. State,* 866 N.E.2d 858, 865-66 (Ind. Ct. App. 2007). The "principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). In addition, the defendant bears the burden of persuading this court that his sentence is inappropriate. *Childress,* 848 N.E.2d at 1080.

Pursuant to I.C. § 35-50-2-5, the minimum sentence for a Class B felony is six years, the maximum sentence is twenty years, and the advisory sentence is ten years. As the trial court sentenced Powers to eight years' incarceration, he received a sentence two years below the advisory sentence.

Powers claims that this sentence is inappropriate in light of his character because he was young at the time of the offense, did not have a criminal history, and pled guilty to

8

the charged crime. He also points to his efforts to improve his life, including the parenting classes he completed, the therapy he attended, and his healthy relationship with the children in his neighborhood. We acknowledge and support the improvements that Powers has made in his life. However, we are not persuaded of Powers' good character in light of the conflicting stories that he gave the police concerning the incident and his disregard for the trial court's no-contact order after he was charged.

With regard to the nature of his offense, Powers argues that the State did not prove that he intentionally hurt his daughter. However, there was evidence that B.P.'s leg was intentionally broken. Dr. Hicks testified that B.P.'s injury was caused by a "bending and twisting force applied to the [] bone," which a ten-week old baby could not have done to herself and which was "indicative of [or] extremely suspicious for a non-accidental or inflicted injury." (Transcript pp. 34; 37). In addition, we note that the State did not get a chance to produce evidence concerning Powers' intent because he pled guilty to the charge prior to trial.

Instead, we find that Powers' offense was serious and amply justifies an eight year sentence. B.P. was only ten weeks old at the time and was essentially defenseless. Powers told police that he changed B.P.'s diaper twice after she was injured. During these diaper changes, B.P. would have been in extreme pain, and yet Powers did not take her to receive treatment. Accordingly, we conclude that the trial court's sentence was appropriate in light of Powers' character and the nature of his offense.

CONCLUSION

Based on the foregoing, we conclude that the trial court properly sentenced Powers.

Affirmed.

BAILEY, J. and CRONE, J. concur