## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 21 2017, 9:03 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Brian Woodward
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Steve Allen Sherron, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | December 21, 2017 <br><br> Court of Appeals Case No. 45A04-1708-CR-1831 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable Natalie Bokota, Judge, Pro Tem <br><br> Trial Court Cause No. 45G01-1609-F4-32 |

**Pyle, Judge.**

# Statement of the Case

[1] Steve Sherron ("Sherron") appeals the sentence imposed after he pled guilty to Level 5 felony stalking.[1] He specifically argues that the trial court abused its discretion in sentencing him and that his five and one-half-year sentence is inappropriate in light of the nature of the offense and his character. Because we conclude that the trial court did not abuse its discretion in sentencing Sherron and that Sherron's sentence is not inappropriate in light of the nature of the offense and Sherron's character, we affirm Sherron's sentence.

[2] We affirm.

# Issues

1. Whether the trial court abused its discretion in sentencing Sherron.

2. Whether Sherron's sentence is inappropriate.

# Facts

[3] Sherron and J.D. ("J.D.") were married in 1990. Their marriage was dissolved the following year shortly after their daughter was born. In 2014, a non-expiring protective order was issued that prohibited Sherron from communicating with J.D. by any means that would be likely to cause her

---

[1] IND. CODE 35-45-10-5.

annoyance or alarm. The protective order also prohibited Sherron from possessing weapons.

[4] In August 2016, Sherron placed a sex toy and dirty shirts on J.D.'s doorstep and threw a pile of trash into her yard. Also that month, police officers found Sherron in J.D.'s backyard with a knife. The State charged Sherron with four counts of stalking as a Level 5 felony, four counts of invasion of privacy as a Level 6 felony, and one count of stalking as a Level 4 felony. Pursuant to the terms of a plea agreement, Sherron pled guilty to one count of stalking as a Level 5 felony, and the State dismissed the other eight felony charges. There was no agreement with respect to sentencing.

[5] J.D.'s cousin, D.H. ("D.H."), testified at the sentencing hearing. D.H. testified that Sherron had "set his daughter up" by giving her a car and then calling the police department to report that the car had been stolen. (Tr. 14). D.H. further testified that she was familiar with Sherron's previous convictions for invasion of privacy and harassment because she was "involved in a lot of them." (Tr. 15). D.H. specifically explained that Sherron had previously "dropp[ed] off packages with feces all smeared on it" at her place of employment. (Tr. 15). According to D.H., Sherron had also hid in the bushes, telephoned D.H. seventy-two (72) times in one night, and threatened to "open fire in the place [she worked]." (Tr. 15).

[6] Sherron's counsel did not object to D.H.'s testimony. Rather, when given the opportunity to question D.H., defense counsel asked her if she had filed a

petition for a restraining order against Sherron, if she had an active restraining order against him, and if he had ever been charged with violating a restraining order pertaining to her. D.H. responded affirmatively to all of defense counsel's questions. Responding to questions from defense counsel, D.H. further testified that Sherron had lunged at her when she reminded him that he had been ordered to stay away from her. She also testified that he had thrown coffee in the face of a man that had attempted to help her.

[7] Testimony at the sentencing hearing further revealed that Sherron has one felony and seven misdemeanor convictions. Sherron's misdemeanor convictions are for harassment, intimidation, and invasion of privacy. He also has misdemeanor convictions for battery by bodily waste, failure to report his mother's dead body, and resisting law enforcement. Sherron's felony conviction is for battery against a child under fourteen years of age. Sherron had been on probation five times. The State asked the trial court to sentence Sherron to the maximum sentence.

[8] In its oral sentencing statement, the trial court assessed Sherron's character as being "predatory, disturbing, dangerous, as evidenced by his repeated acts of the invasions of privacy, harassment and the instant crime of stalking." (Tr. 32). The trial court pointed out that Sherron had "been given the benefit of probation five times in the past, but he continues to break the law. And so we consider that response to show that he has disdain for the law and hold other people's concerns in contempt, quite frankly." (Tr. 32-33). The trial court

found no mitigating factors and sentenced Sherron to five and one-half years for his Level 5 felony conviction.

# Decision

## 1. Abuse of Discretion

[9] Sherron first argues that the trial court abused its discretion in sentencing him. Sentencing decisions rest within the sound discretion of the trial court. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007). So long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Id.* An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* at 491. A trial court may abuse its discretion in a number of ways, including: (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that includes aggravating and mitigating factors that are unsupported by the record; (3) entering a sentencing statement that omits reasons that are clearly supported by the record; or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. *Id.* at 490-91.

[10] Here, Sherron contends that the trial court abused its discretion in failing to consider his guilty plea as a mitigating factor. A finding of a mitigating factor is not mandatory but is within the discretion of the trial court. *Page v. State*, 878 N.E.2d 404, 408 (Ind. Ct. App. 2007), *trans. denied*. In order to show that the trial court abused its discretion in failing to find a mitigating factor, the

defendant must establish that the mitigating evidence is both significant and clearly supported by the record. *Rogers v. State*, 958 N.E.2d 4, 9 (Ind. Ct. App. 2011). A guilty plea is not necessarily a mitigating factor where the defendant receives a substantial benefit from the plea. *Barker v. State*, 994 N.E.2d 306, 312 (Ind. Ct. App. 2013), *trans. denied*. Here, in exchange for Sherron's guilty plea to one Level 5 felony, the State dismissed eight additional felony charges. Sherron received a substantial benefit from his plea, and the trial court did not abuse its discretion in failing to consider his guilty plea as a mitigating factor.

[11] Sherron also contends that the trial court abused its discretion in considering D.H.'s sentencing hearing testimony, which he alleges was hearsay. Sherron has waived appellate review of this issue because he failed to object to D.H.'s testimony at the sentencing hearing. *See McClendon v. State*, 671 N.E.2d 486, 489 (Ind. Ct. App. 1996) (explaining that a party cannot raise an issue for the first time on appeal). Waiver notwithstanding, the strict rules of evidence do not apply in a sentencing hearing, and hearsay testimony is therefore admissible. Indiana Evidence Rule 101(d)(2); *Dillon v. State*, 492 N.E.2d 661, 664 (Ind. 1986). We find no abuse of the trial court's discretion.

[12] **2. Inappropriate Sentence**

[13] Sherron further argues that his sentence is inappropriate. Indiana Appellate Rule 7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the

offender. The defendant bears the burden of persuading this Court that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Whether we regard a sentence as inappropriate turns on the "culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008).

[14] The Indiana Supreme Court has further explained that "[s]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[15] When determining whether a sentence is inappropriate, the advisory sentence is the starting point the Legislature has selected as an appropriate sentence for the crime committed. *Childress*, 848 N.E.2d at 1081. Here, Sherron was convicted of one level 5 felony. The sentencing range for a Level 5 felony is between one and six years, with an advisory sentence of three years. *See* I.C. § 35-50-2-6. The trial court sentenced Sherron to five and one-half years, which is less than the maximum sentence and more than the advisory sentence.

[16] With regard to the nature of the offense, Sherron stalked J.D., his ex-wife, while there was a non-expiring protective order in place that prohibited Sherron from communicating with J.D. by any means that would be likely to cause her annoyance or alarm. With regard to the nature of Sherron's character, he has five misdemeanor convictions and one felony conviction. Several of the misdemeanor convictions are similar to the stalking conviction in this case. Sherron has also been on probation five times. His former contacts with the law have not caused him to reform himself. *See Jenkins v. State*, 909 N.E.2d 1080, 1086 (Ind. Ct. App. 2009), *trans. denied*. Further, as the trial court pointed out, Sherron's repeated invasions of privacy, stalking, and harassment reveal a predatory, dangerous, and disturbing character.

[17] Sherron has failed to meet his burden to persuade this Court that his five and one-half-year sentence for his Level 5 Felony stalking conviction is inappropriate.

[18] Affirmed.

Kirsch, J., and Bailey, J., concur.