

**FILED**
Nov 14 2018, 5:25 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Megan Shipley
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Michael Norris,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

November 14, 2018

Court of Appeals Case No.
18A-CR-86

Appeal from the Marion Superior Court

The Honorable Alicia Gooden, Judge

The Honorable Richard E. Hagenmaier, Commissioner

Trial Court Cause No.
49G21-1702-F4-4925

**Pyle, Judge.**

# Statement of the Case

Michael Norris ("Norris") appeals his convictions following a bifurcated jury trial for Level 4 felony possession of a firearm by a serious violent felon,[1] Level 6 felony resisting law enforcement,[2] and Class A misdemeanor resisting law enforcement.[3] Norris argues that: (1) the State committed prosecutorial misconduct during closing argument; (2) the two convictions for resisting law enforcement violate the continuous crime doctrine; and (3) the trial court improperly sentenced him.

We conclude that the State did not commit prosecutorial misconduct; Norris' misdemeanor conviction for resisting law enforcement violates the continuous crime doctrine; and the trial court did not improperly sentence Norris. The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions for the trial court to vacate the Class A misdemeanor resisting law enforcement conviction and enter a new sentencing order and abstract of judgment to reflect the vacated conviction.

We affirm in part, reverse in part, and remand with instructions.

# Issues

---

[1] IND. CODE § 35-47-4-5.

[2] I.C. § 35-44.1-3-1.

[3] I.C. § 35-44.1-3-1.

1. Whether the prosecutor's statement during closing argument constitute prosecutorial misconduct.

2. Whether the two resisting law enforcement convictions violate the continuous crime doctrine.

3. Whether the trial court improperly sentenced Norris.

# Facts

At approximately 4:00 a.m. on February 4, 2017, officers from the Beech Grove Police Department responded to a report of a disturbance at a residence. Officer Lee Huffman ("Officer Huffman") arrived on scene and was directed to a vehicle that was stopped in an alley behind the residence. Officer Huffman observed a silver van in the alley pull away and drive northbound. He followed the van and using his in-car radar unit, determined that the van was traveling forty-eight (48) miles per hour in an area with a speed limit of twenty-five (25) miles per hour. Officer Huffman initiated a traffic stop and activated the emergency lights on his marked police car. The van did not stop and accelerated to a higher speed. Officer Huffman then turned on his siren. The van continued driving at a high rate of speed and eventually crashed into a tree.

Norris, the driver and sole occupant, stumbled out of the van. Officer Huffman observed Norris "reaching into his waistband area or pockets." (Tr. 118). Officer Huffman could not tell exactly what he was reaching for, but "he was reaching for something." (Tr. 118). Norris then fled northbound toward a tree line and Officer Huffman, who was in a fully marked police uniform, "yell[ed] at him to stop, get on the ground, police." (Tr. 117). As Norris fled, Officer

Huffman observed Norris toss an object near a tree. Officer Huffman could not see what the object was. Norris ran to a ravine, where he jumped and rolled down it. Officer Huffman pursued Norris and was able to apprehend him.

[6] Officer Huffman returned to the scene of the accident with Norris and informed an assisting officer of the "general area" where he had seen Norris throw an object to the ground. (Tr. 120, 135). The assisting officer located a Smith & Wesson nine-millimeter handgun next to a tree on top of some leaves "within seconds" of Officer Huffman advising of the area where the object was thrown. (Tr. 136).

[7] On February 6, 2017, the State charged Norris with: Count I, unlawful possession of a firearm by a serious violent felon, a Level 4 felony; Count II, resisting law enforcement, a Level 6 felony; Count III, possession of a controlled substance, a Level 6 felony; and Count IV, resisting law enforcement, a Class A misdemeanor.[4] A one-day bifurcated jury trial was held on November 30, 2017. The jury was instructed that in the first phase of the trial, it would determine whether Norris knowingly or intentionally possessed a firearm as charged in Count I and on the two resisting law enforcement counts. The jury was also instructed that it would determine whether the possession of a firearm was legal or illegal during the second phase of the trial.

---

[4] The State dismissed Count III in the charging information on June 9, 2017. While the misdemeanor resisting law enforcement count was Count IV in the charging information, it was listed as Count III in the jury instructions and verdict forms. It was listed as Count IV in the sentencing order.

[8] The prosecutor argued the following during closing arguments for the first phase of the trial:

> Now we get to the possession of the firearm. Is Mr. Norris the unluckiest man in Beech Grove that on this day, he decides that he's going to flee from police in [a] car, crashes that car, runs on foot, and then rolling down a ravine, and then, lo and behold, just where he happens to be after doing that, there's a gun that he's *not allowed to possess – that it's unlawful for him to have*.

(Tr. 160) (emphasis added). Counsel for Norris objected, stating, "[t]here's no evidence that it's unlawful. That's the whole point of bifurcating the trial." (Tr. 160). He requested an admonishment and also moved for a mistrial "just for the purposes of making the record." (Tr. 161). The trial court admonished the jury as follows:

> All right. Ladies and gentlemen of the jury, the only issue as far as the gun is whether he possessed it at this point. Whether it was unlawful or not has not yet been determined, and that will be covered in the instructions. Okay? All right.

(Tr. 161). The prosecutor then argued to the jury, without objection, that the reason, "[Norris] fled after that accident knowing it was – he was injured – because he had to get rid of a gun, and that's what he did." (Tr. 162). Counsel for Norris then argued in closing:

> There's a lot of reasons why a young black man might run, even before he knows that it's a police officer. He's sitting in an alley. He sees a car creeping up behind him. That doesn't mean that he's running because he's got this gun. There's all kinds of reasons that he could be running, none of them right, but still reasons.

(Tr. 168). On rebuttal, the prosecutor argued, "he has a gun he is not supposed to have. He needed to get it – needed to get it away from his body." (Tr. 171). Counsel for Norris again objected, and the trial court overruled the objection.

[9] In the first phase of the trial, the jury returned guilty verdicts on the possession aspect of Count I and the two resisting law enforcement counts. Norris then waived his right to a jury trial for the second phase of the trial on his status as a serious violent felon. Norris admitted to the charged prior conviction alleged in support of the serious violent felon charge. The trial court conducted a sentencing hearing on December 18, 2017. For the Level 4 felony possession of a firearm by a serious violent felon conviction, the trial court sentenced Norris to twelve (12) years, with eight (8) years executed in the Department of Correction, two (2) years executed on Marion County Community Corrections, and two (2) years suspended to probation. For the Level 6 felony resisting law enforcement conviction, the court sentenced Norris to 636 days in the Department of Correction. For the Class A misdemeanor resisting law enforcement conviction, the court sentenced Norris to one (1) year in the Department of Correction and ordered all counts to run concurrently. Norris now appeals.

## Decision

[10] On appeal, Norris argues that: (1) the State committed prosecutorial misconduct; (2) his two convictions for resisting law enforcement violate the

continuous crime doctrine; and (3) the trial court improperly sentenced him. We will address each of these arguments in turn.

## 1. Prosecutorial Misconduct

First, Norris asserts that two of the prosecutor's closing statements constituted prosecutorial misconduct. When reviewing a claim of prosecutorial misconduct, we must first consider whether the prosecutor engaged in misconduct. *Williams v. State*, 724 N.E.2d 1070, 1080 (Ind. 2000), *reh'g denied*, *cert. denied*. "We then consider whether the alleged misconduct placed the defendant in a position of grave peril to which [he] should not have been subjected." *Id*. "Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct." *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006). "The gravity of the peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct." *Id*. In addition to the persuasiveness of a comment, a court should also consider the strength of the State's case. *Oldham v. State*, 779 N.E.2d 1162, 1175 (Ind. Ct. App. 2002), *trans. denied*. "To preserve a claim of prosecutorial misconduct, the defendant must—at the time the alleged misconduct occurs—request an admonishment to the jury, and if further relief is desired, move for a mistrial." *Jerden v. State*, 37 N.E.3d 494, 498 (Ind. Ct. App. 2015). Failure to do so results in waiver. *Id*.

Norris asserts that the prosecutor's repeated statements to the jury that he was not legally allowed to have a gun, when the State had not presented any

evidence to support this assertion, put him in "grave peril" and had a strong "probable persuasive effect" on the jury. (Norris' Br. 15). Specifically, he cites the following statements:

> Now we get to the possession of the firearm. Is Mr. Norris the unluckiest man in Beech Grove that on this day, he decides that he's going to flee from police in car, crashes that car, runs on foot, and then rolling down a ravine, and then, lo and behold, just where he happens to be after doing that, there's a gun that he's not allowed to possess – that it's unlawful for him to have.
>
> * * *
>
> What are you reaching for? You're going to reach for what – a cell phone? – and risk getting shot by the police officer who's chasing you? No, he has a gun he is not supposed to have. He needed to get it – needed to get it away from his body.

(Tr. 160, 171).

[13] A prosecutor must confine closing argument to comments based only upon the evidence in the record. *Lambert v. State*, 743 N.E.2d 719, 734 (Ind. 2001), *reh'g denied, cert. denied*. Further, Indiana Professional Conduct Rule 3.4(e) provides:

> A lawyer shall not … in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused.

[14] The prosecutor's first statement was misconduct, but it did not put Norris in grave peril. This was a one-day trial. A substantial portion of the morning was devoted to jury voir dire, and the court's fifteen preliminary instructions were

read to the jurors following their lunch break. Among other things, these preliminary instructions advised the jury that the defendant is innocent and that the State has the burden to prove that the defendant is guilty beyond a reasonable doubt of every essential element of the charged offenses. The preliminary instructions also stated:

> The trial of Count I will be in two stages. In the first stage, there will be a trial on the issue of whether the Defendant knowingly or intentionally possessed the firearm as charged. If you find beyond a reasonable doubt, that the defendant knowingly or intentionally possessed the firearm as charged, there will be a second stage of the trial. In the second stage, there will be a trial on the issue of whether the possession of the firearm was legal or illegal.

(Tr. 100). The final instructions referred the jury to the court's preliminary instructions and again advised the jurors that the trial on Count I was in two stages. Thus, the jury was properly instructed on the procedures for the trial and the elements of the charged offenses.

[15] Second, our review of the transcript reveals that the prosecutor did not introduce any evidence during the first phase of the trial to show that Norris was not legally allowed to possess a gun. While it was improper for the prosecutor to tell the jury that "there's a gun that [Norris is] not allowed to possess – that is unlawful for him to have[,]" the trial court immediately issued the following admonishment to the jury:

> All right. Ladies and gentlemen of the jury, the only issue as far as the gun is whether he possessed it at this point. Whether it was unlawful or not has not yet been determined, and that will be covered in the instructions. Okay? All right.

(Tr. 161). If the trial court gives an admonishment, it may be considered in determining whether the misconduct was harmless. *Bonner v. State*, 650 N.E.2d 1139, 1142 (Ind. 1995). Accordingly, we find that, in this case, the misconduct committed by the prosecutor was adequately addressed by the trial court's admonishment, and Norris has not shown that the prosecutor's statements placed him in grave peril.

[16] Concerning the prosecutor's statement in rebuttal that Norris was "not supposed to have" a gun, we find that this statement was designed to counter Norris' closing argument that "he had motives to flee other than the crime charged – that is, to avoid arrest on unrelated matters." (Norris' Br. 16). *See Cooper*, 854 N.E.2d at 836 (explaining that "[p]rosecutors are entitled to respond to allegations and inferences raised by the defense even if the prosecutor's response would otherwise be objectionable"). That said, to the extent that Norris argues that the prosecutor's statements constitute prosecutorial misconduct, he invited any such error. "'A party may not invite error, then later argue that the error supports reversal, because error invited by the complaining party is not reversible error.'" *Booher v. State*, 773 N.E.2d 814, 822 (Ind. 2002) (citing *Ellis v. State*, 707 N.E.2d 797, 803 (Ind. 1999) (quoting *Kingery v. State*, 659 N.E.2d 490, 494 (Ind. 1995), *reh'g denied*)).

[17] Lastly, any probable persuasive effect was further lessened by the overall strength of the State's case. Where there is overwhelming independent evidence of a defendant's guilt, error made by a prosecutor during the closing

argument may be harmless. *Coleman v. State*, 750 N.E.2d 370, 375 (Ind. 2001). Here, Norris fled from the police, crashed his vehicle, fled from the scene, an officer observed him throw an object, and a gun was recovered "within seconds" in the area where he was observed to have thrown an object. (Tr. 136).

[18] In light of the instructions, the trial court's admonishment to the jury, and the overall strength of the State's case, we conclude that Norris has failed to show that the statements subjected him to grave peril to which he would not have been subjected otherwise.[5] *See Ryan v. State*, 9 N.E.3d 663, 667 (Ind. 2014) (explaining that a claim of prosecutorial misconduct involves both a showing that the prosecutor engaged in misconduct and that the misconduct placed the defendant in a position of grave peril), *reh'g denied*.

## 2. Continuous Crime Doctrine

[19] Norris next argues that his two resisting law enforcement convictions violate the continuous crime doctrine. Specifically, he argues that the trial court erred when it entered judgment of convictions on the two counts because they were based on one continuous incident, violating the continuous crime doctrine. The continuous crime doctrine is a category of Indiana's prohibition against double

---

[5] Although the prosecutor's statements did not rise to the level of prosecutorial misconduct, we do not condone the State's failure to follow instructions. The State should never have sought to draw the jury's attention to Norris's inability to possess a firearm during phase one of the trial.

jeopardy. It provides that, under such circumstances, a defendant cannot be charged multiple times for the same offense. *See Hines v. State*, 30 N.E.3d 1216, 1220 (Ind. 2015). The State agrees with Norris. Both Norris and the State ask that we reverse the conviction for Class A misdemeanor resisting law enforcement to resolve the continuous crime doctrine violation.

[20] A person commits the offense of Class A misdemeanor resisting law enforcement by fleeing from a law enforcement officer after the officer has, by visible or audible means, identified himself and ordered the person to stop. I.C. § 35-44.1-3-1(a)(3). The offense is a Level 6 felony if the person "uses a vehicle to commit the offense." I.C. § 35-44.1-3-1(b)(1)(A).

[21] This Court has held in several cases that a defendant cannot be convicted of both misdemeanor and felony resisting law enforcement when he or she flees in a vehicle, gets out, and immediately flees on foot. *See, e.g., Lewis v. State*, 43 N.E.3d 689, 691 (Ind. Ct. App. 2015); *Nevel v. State*, 818 N.E.2d 1, 5 (Ind. Ct. App. 2004). In both of these cases, the defendant fled from the police in a vehicle, got out of the vehicle, and continued to flee from the police on foot. He was charged and convicted of both misdemeanor and felony resisting law enforcement and this Court vacated the misdemeanor resisting convictions. *Lewis*, 43 N.E.2d at 691; *Nevel*, 818 N.E.2d at 5.

[22] The instant case is in line with the above cited cases. Norris' actions of fleeing by vehicle and then on foot constitute one continuous act of resisting law enforcement, and we hold that convictions on both counts cannot stand. *Lewis*,

43 N.E.2d at 691; *Nevel*, 818 N.E.2d at 5. Our holdings are also consistent with our supreme court's decision in *Hines*, 30 N.E.3d at 1220, where the court clarified that the continuous crime doctrine applies "only where a defendant has been charged multiple times with the same 'continuous' offense." Our supreme court further explained that "[t]he Legislature, not this Court, defines when a criminal offense is continuous, e.g. not terminated by a single act or fact but subsisting for a definite period and covering successive, similar occurrences." *Id*. at 1219. We hereby remand this case to the trial court with instructions to vacate Norris' conviction for Class A misdemeanor resisting law enforcement and to amend the abstract of judgment, chronological case summary, and any other relevant court documents to reflect the vacated Class A misdemeanor conviction.

## 3. Sentencing

[23] Norris argues that the trial court improperly sentenced him. Specifically, he argues that the trial court abused its discretion and his sentence is inappropriate in light of the nature of the offense and his character. We will address each argument in turn.

### A. Abuse of Discretion

[24] Norris' abuse of discretion argument has two components. First, he argues that the trial court failed to recognize a mitigating factor. Alternatively, he argues that the trial court relied on an improper aggravating factor. Sentencing decisions rest within the sound discretion of the trial court. *Anglemyer v. State*,

868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). So long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Id.* An abuse of discretion will be found where the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* A trial court may abuse its discretion in a number of ways, including: (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that includes aggravating and mitigating factors that are unsupported by the record; (3) entering a sentencing statement that omits reasons that are clearly supported by the record; or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. *Id.* at 490–91.

[25] Turning to his first contention, Norris specifically argues that the trial court failed to recognize as a mitigating factor his admission that he had a prior conviction that made him a serious violent felon. In support of this argument, he contends that his decision to admit and waive phase two of his trial "saved the trial court, the jury, and the State significant time and resources." (Norris' Br. 24). "'The finding of mitigating factors is not mandatory and rests within the discretion of the trial court.'" *Page v. State*, 878 N.E.2d 404, 408 (Ind. Ct. App. 2007) (quoting *O'Neil v. State*, 719 N.E.2d 1243, 1244 (Ind. 1999)), *trans. denied*. In order to show that the trial court abused its discretion in failing to find a mitigating factor, the defendant must establish that the mitigating evidence is both significant and clearly supported by the record. *Rogers v. State*,

958 N.E.2d 4, 9 (Ind. Ct. App. 2011). "'A guilty plea is not necessarily a mitigating factor where the defendant receives substantial benefit from the plea or where evidence against the defendant is so strong that the decision to plead guilty is merely pragmatic.'" *Barker v. State*, 994 N.E.2d 306, 312 (Ind. Ct. App. 2013) (quoting *Amalfitano v. State*, 956 N.E.2d 208, 212 (Ind. Ct. App. 2011), *trans. denied*), *reh'g denied, trans. denied*.

[26] Here, the State possessed documentation in the form of the charging information, sentencing order, and judgment of conviction for Norris' prior felony conviction that made him a serious violent felon such that the decision to admit was merely pragmatic.[6] Not only was the State ready with the necessary documents to prove its case, but the jury was already empaneled and prepared for phase two of the proceedings. Accordingly, we conclude that the trial court did not abuse its discretion.

[27] Next, Norris argues that the trial court abused its discretion because it relied on his prior 2012 resisting law enforcement conviction as an aggravating factor when it was an element of the offense. Norris acknowledges that the trial court noted it "would not consider the prior conviction as an aggravator," but argues that the trial court's statement that "what weigh's [sic] heavy on my mind is the resistings in these cases" was an improper aggravator as a matter of law.

---

[6] While this was an admission to an element of the crime rather than a guilty plea to a count, the trial court and the parties recognized that the admission had a similar significance to a guilty plea.

(Norris' Br. 26) (Tr. 206). However, Norris does not quote the trial court's entire statement. In full, the trial court stated:

> I think what weighs heavy on my mind is the resistings in these cases. In one case, somebody was hurt. In this case, somebody very well could have been hurt and it just shows a desperation not to be caught and not to be a person that -- to avoid the consequences of your actions and your history.

(Tr. 206).

[28] Norris is correct that it is improper as a matter of law to find that a material element of a crime is an aggravating circumstance. *Gleason v. State*, 965 N.E.2d 702, 711 (Ind. Ct. App. 2012). However, as our supreme court has recently explained, while a defendant's convictions cannot be used to enhance his sentence, . . . "the particular facts — the ongoing nature and length of [his] criminal conduct — can properly be considered as aggravation." *Phipps v. State*, 90 N.E.3d 1190, 1198 (Ind. 2018).

[29] Our review of the sentencing-hearing transcript reveals that the trial court did not use Norris' 2012 conviction as an aggravating factor. During sentencing, the trial court stated:

> And resisting law enforcement as a Class C misdemeanor or as a Class C felony in 2011, which is the predicate. I do notice — note that, you know, there was injury in that case to a state trooper. But I do note and I will take into account, that his incrimination [probation] was revoked and he was ordered to do present time in that case. But the conviction, obviously, I will *not* consider as an aggravator above the presumptive.

(Tr. 205-06) (emphasis added).

[30] It is clear that during sentencing, the trial court was referring to the particular facts of the offense, that his probation was revoked, and that it did not rely upon the conviction as an aggravator. The reference to the injury in the 2012 case was made in relation to the finding that the instant case evidenced a desperation to avoid capture that placed people at risk of injury. This is proper under Indiana law. *See Gleason*, 965 N.E.2d at 711 (holding that while a material element of a crime cannot be an aggravating circumstance, the nature and circumstances of the crime can be an aggravator and that if the nature of the offense is identified as an aggravating factor, the trial court must discuss facts that go beyond the statutory requirements of the crime). Accordingly, we conclude that the trial court did not abuse its discretion when sentencing Norris.

## B. Inappropriate Sentence

[31] Next, Norris contends that his sentence is inappropriate. This Court may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). "The 7(B) 'appropriateness' inquiry is a discretionary exercise of the appellate court's judgment, not unlike the trial court's discretionary sentencing determination." *Knapp v. State*, 9 N.E.3d 1274, 1291-92 (Ind. 2014), *cert. denied*. "On appeal, though, we conduct that review with substantial deference and give due consideration to the trial court's decision—since the principal role of our review is to attempt to leaven the outliers, and not to achieve a perceived correct sentence." *Id*. at 1292 (internal quotation marks, internal bracket, and citations

omitted). "Appellate Rule 7(B) analysis is not to determine whether another sentence is more appropriate but rather whether the sentence imposed is inappropriate." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012) (internal quotation marks and citation omitted), *reh'g denied*. The defendant has the burden of persuading the appellate court that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[32] "'[R]egarding the nature of the offense, the advisory sentence is the starting point the Legislature has selected as an appropriate sentence for the crime committed.'" *Bowman v. State*, 51 N.E.3d 1174, 1181 (Ind. 2016) (quoting *Anglemyer*, 868 N.E.2d at 494). Here, Norris was convicted of one Level 4 felony and one Level 6 felony.[7] The sentencing range for a Level 4 felony is "for a fixed term of between two (2) and twelve (12) years, with the advisory sentence being six (6) years." I.C. § 35-50-2-5.5. The sentencing range for a Level 6 felony is "for a fixed term of between six (6) months and two and one half (2 ½) years, with the advisory sentence being one (1) year." I.C. § 35-50-2-7(b). For his Level 4 felony conviction, the trial court sentenced Norris to twelve (12) years, with eight years ordered to be executed in the Department of Correction, two years to be executed on Marion County Community Corrections, and two years suspended to probation, and 636 days for his Level 6 felony conviction. Accordingly, Norris received the maximum sentence

---

[7] Although he was also sentenced for his Class A misdemeanor resisting law enforcement conviction, discussion of this is omitted due to our finding that it violated the continuous crime doctrine.

possible for his Level 4 felony and above the advisory sentence for his Level 6 felony.

[33] We disagree with Norris' contention that "the nature of the offense is not so egregious that it merits a sentence six years above the advisory." (Norris' Br. 29). Our review of the nature of Norris' offenses reveals that he possessed a firearm as a serious violent felon, fled from the police in a vehicle at a high rate of speed in a residential neighborhood and crashed, and then fled from the police on foot. Taken together, these circumstances underscore the severity of the nature of Norris' crimes.

[34] When considering the character-of-the-offender prong of our inquiry, one relevant consideration is the defendant's criminal history. *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007). The significance of a defendant's prior criminal history will vary "based on the gravity, nature and number of prior offenses as they relate to the current offense." *Smith v. State*, 889 N.E.2d 261, 263 (Ind. 2008) (internal quotation marks and citation omitted).

[35] Indeed, the most glaring aspect of Norris' character is his extensive criminal history. He concedes that he has a lengthy criminal history but asks that we recognize that his criminal history is "either directly related to substance abuse or for crimes closely associated with drug addiction." (Norris' Br. 31). This argument is unpersuasive. Norris' criminal history dates backs twenty years. Excluding the convictions from the instant case, his history includes five felony convictions: (1) a 1998 Class D felony conviction for theft; (2) a 2004 Class C

felony conviction for possession of cocaine; (3) a 2012 Class C felony conviction for resisting law enforcement; (4) a 2016 Level 6 felony conviction for possession of methamphetamine; and (5) a 2016 Level 6 felony conviction for residential entry. Norris also has four misdemeanor convictions: (1) a 1999 Class C misdemeanor conviction for illegal possession of an alcoholic beverage; (2) a 2008 Class B misdemeanor conviction for possession of a device or substance used to interfere with drug or alcohol screening; (3) a 2014 Class A misdemeanor conviction for operating a vehicle while intoxicated; and (4) a 2015 Class A misdemeanor conviction for theft. Norris was also placed on probation three times and had probation revoked all three times. He was also terminated from drug treatment court in 2007 and violated the terms of a community transition program leading to revocation in 2009. Norris' current offenses are part of a pattern of disregarding the criminal laws of Indiana, which reflects negatively on his character. Accordingly, Norris has not persuaded us that his sentence is inappropriate.

[36] Affirmed in part, reversed in part, and remanded with instructions.

Vaidik, C.J., and Barnes, Sr.J., concur.