## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 05 2020, 11:12 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Justin D. Roddye
Monroe County Public Defender's Office
Bloomington, Indiana

ATTORNEY FOR APPELLEE

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Donald Joseph Lamm, *Appellant/Defendant,* v. State of Indiana, *Appellee/Plaintiff.* | June 5, 2020 Court of Appeals Case No. 19A-CR-3030 Appeal from the Monroe Circuit Court The Hon. Valeri Haughton, Judge Trial Court Cause No. 53C02-1804-F3-409 |

**Bradford, Chief Judge.**

# Case Summary

[1] In April of 2018, Donald Lamm argued with his girlfriend Sarah Wray and threatened to bury Wray alive and kill her friends if she left. The State charged Lamm with, *inter alia*, Level 5 felony intimidation, and he pled guilty to that charge and two charges in other cause numbers. Pursuant to a written plea agreement, the trial court was to impose a sentence of four years in this cause number, with placement at its discretion. The trial court sentenced Lamm to serve his entire four-year sentence in the Department of Correction ("DOC"). Lamm contends that the trial court abused its discretion in sentencing him and that his placement in DOC is inappropriately harsh. Because we disagree, we affirm.

# Facts and Procedural History

[2] On April 5, 2018, Lamm was with his girlfriend Wray in their Monroe County home when they began to argue. At one point, Lamm pulled down Wray's pants and "held himself against her while telling her 'Isn't this what you just f[*****] want[?]'" Appellant's App. Vol. II p. 12. When Wray refused to look Lamm in the eyes, he took a pair of scissors and a butane torch, heated the blades with the torch, asked Wray if she knew what an "eyeball boil" was, and told her that she was about to find out, which she took to mean that Lamm intended to stab her in the eye with the scissors. Appellant's App. Vol. II p. 12. Lamm also grabbed Wray several times around the neck, causing her to have difficulty breathing, and told her that she was going to stay at home all night

and he would find her if she left. Lamm also threatened to "shoot her friends dead until he found her and then [he] would slowly bury her alive." Appellant's App. Vol. II p. 13. On April 10, 2018, the State charged Lamm with Level 3 felony criminal confinement, Level 5 felony intimidation, Level 6 felony strangulation, and Class A misdemeanor domestic battery in cause number 53C01-1804-F3-409 ("Cause No. 409").

[3] On June 13, 2019, while released on bond in Cause No. 409, Lamm strangled Wray and shoved another person into a door. As a result of her injuries, Wray had to be placed "on a very high-risk pregnancy status where [she] had several hematomas around [her] uterus and trauma to the placenta where [she] almost lost [her] child." Tr. Vol II. p. 18. Based on the events of June 13, 2019, the State charged Lamm with Level 5 felony domestic battery, Level 5 felony strangulation, Class A misdemeanor domestic battery, and Class B misdemeanor battery in cause number 53C02-1906-F5-657 ("Cause No. 657").

[4] In September of 2019, Lamm was incarcerated when a jail officer intercepted a letter indicating that he was attempting to locate a weapon for use upon his release from jail. The officer notified the prosecutor's office, and this led to a bond-review hearing at which the jail officer testified and after which the trial court refused to release Lamm. In a later telephone call with his mother, Lamm told her, "'Dude, if that one mother***** even attempts to step a foot in B block, I'm going to tear his a[**] up.'" Appellant's App. Vol. II p. 16. Lamm was aware that the telephone call was being recorded and that its content could be relayed to the jail officer. The State charged Lamm with Level 6 felony

intimidation for his threat to the jail officer in cause number 53C02-1909-F6-1032 ("Cause No. 1032").

[5] On December 3, 2019, Lamm and the State entered into a plea agreement pursuant to which he would plead guilty to Level 5 felony intimidation in Cause No. 409, Level 5 felony strangulation in Cause No. 657, and Level 6 felony intimidation in Cause No. 1032 in exchange for the dismissal of all other charges in the three cause numbers. The plea agreement fixed his sentence in Cause No. 409 at four years, with placement at the discretion of the trial court; in Cause No. 657 at three years, all suspended; and in Cause No. 1032 at 418 days of incarceration and 330 days of home detention.

[6] The trial court sentenced Lamm to four years of incarceration in the DOC in Cause No. 409; three years of incarceration, all suspended to probation, in Cause No. 657; and 418 days of incarceration in Cause No. 1032. The trial court noted that the sentence in Cause No. 1032 had already been served and ordered the sentences in Cause Nos. 409 and 657 to be served consecutively.

# Discussion and Decision

[7] Lamm pled guilty to Level 5 felony intimidation in Cause No. 409 and agreed that his sentence would be four years, with placement subject to the discretion of the trial court.[1] Indiana Code section 35-50-2-6(b) provides that "[a] person who commits a Level 5 felony […] shall be imprisoned for a fixed term of

---

[1] Lamm does not challenge the sentences in Cause Nos. 657 and 1032.

between one (1) and six (6) years, with the advisory sentence being three (3) years." Lamm contends that the trial court abused its discretion in ordering that he be committed to the DOC and that this placement is inappropriately harsh.

# I.  Abuse of Discretion

[8]     Under our current sentencing scheme, "the trial court must enter a statement including reasonably detailed reasons or circumstances for imposing a particular sentence." *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *modified on other grounds on reh'g*, 875 N.E.2d 218 (Ind. 2008).  We review the sentence for an abuse of discretion.  *Id.*  An abuse of discretion occurs if "the decision is clearly against the logic and effect of the facts and circumstances." *Id.*  A trial court abuses its discretion if it (1) fails "to enter a sentencing statement at all[,]" (2) enters "a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons," (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration," or (4) considers reasons that "are improper as a matter of law."  *Id*. at 490–91.  However, the relative weight or value assignable to reasons properly found, or to those which should have been found, is not subject to review for abuse of discretion.  *Id*.

[9]     Lamm contends that the trial court's sentencing statement was insufficiently detailed.  Lamm also contends that the trial court failed to consider and/or properly weigh his minimal criminal history, his military service, his acceptance

of responsibility for his actions by pleading guilty, his history of substance abuse, the hardship to his family should he be incarcerated, and the likelihood that he would respond affirmatively to probation or home detention. The trial court made the following statement before pronouncing sentence:

> I believe that [the jail officer] indicated that he recognized Mr. Lamm's service to the Country, as do I, and I too appreciate that, however, your service Mr. Lamm does not negate the disservice that you have done to your victims, and uh, to those responsible for, quite frankly, your wellbeing. Um, I will be candid when I say that when I read, the thing that I think stuck with me when I read the probable cause affidavit, and also the Pre-Sentence Investigation Report, the idea of someone using a butane torch to heat scissors in front of the person that they supposedly love with the implicit threat that you're going to use them somehow and start talking about an eyeball boil, I think that stuck in my head in a way that I cannot even express to you. Um, I would imagine that's as terrifying to experience or more terrifying to experience than it is horrifying to read about. The fact that there was a second attack is even more disturbing. Uh, I grant that you have a limited conviction history, however, some of your actions have been disturbing, um, I'm glad that you've been sober for a while, but quite frankly it's easier to be sober when incarcerated than it is when you're out and about. And I'm sure that temptation will raise its ugly head again. I hope that you are able to deal with it and get some treatment. I appreciate that you've accepted responsibility for your actions. I appreciate the fact that you've been fairly open and candid about them. Um, and I also appreciate that [Wray] thinks that you need some mental health services. I'm trying to touch on all of those things because I have to look at the big picture. And while I understand [defense counsel's] feeling that you could benefit from being on home detention and that if you were with the Veterans it would be in Marion County, that would keep you away from [Wray], but doesn't change the underlying causes and, and your actions and

doesn't address your being held accountable and responsible for the things that you have done. Despite some of the, perhaps good things you've done, I'm not sure that I feel your addiction is a mitigating factor. Um, as [defense counsel] argued, I, I think it's something that you need [to] get, that you need to address. Um, I have a hard time with having you released to be closer to your children when, quite honestly I don't think you're being a role model for your children at this point in time. Children don't need to have a father who's addicted, who attacks people, who threatens to kill people, who threatens to blind them, and those are some of the things that I've been, that I've read about you. Now, I've had some pleasant conversations with you in here, and I don't think that, by any means, you're beyond redemption. On the other hand, I think that I have to hold you responsible for the things that you did in fact do.

Tr. Vol. II pp. 27–28.

[10] We conclude that the trial court's statement sufficiently states the reasons that it imposed the sentence it did in Cause No. 409. The trial court clearly focused on the circumstances of Lamm's crime, especially how he threatened Wray with the heated scissors. The trial court also noted Lamm's struggles with sobriety when he is not incarcerated, the present need to keep him away from Wray and his children, and the importance of him being held responsible for his actions. The trial court's statement was more than sufficiently detailed to convey its rationale.

[11] Moreover, and contrary to Lamm's second contention, the record indicates that the trial court considered all of Lamm's proffered mitigators before pronouncing sentence. To the extent that Lamm argues that the trial court abused its discretion by failing to give these circumstances the mitigating weight

he would have wished, this is not a cognizable claim on appeal. *See Anglemyer*, 868 N.E.2d at 491 ("Because the trial court no longer has any obligation to 'weigh' aggravating and mitigating factors against each other when imposing a sentence […], a trial court can not now be said to have abused its discretion in failing to 'properly weigh' such factors."). Lamm has failed to establish that the trial court abused its discretion in sentencing him.

## II. Appropriateness of DOC Placement

[12] We "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). "Although appellate review of sentences must give due consideration to the trial court's sentence because of the special expertise of the trial bench in making sentencing decisions, Appellate Rule 7(B) is an authorization to revise sentences when certain broad conditions are satisfied." *Shouse v. State*, 849 N.E.2d 650, 660 (Ind. Ct. App. 2006), *trans. denied* (citations and quotation marks omitted). "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). In addition to the "due consideration" we are required to give to the trial court's sentencing decision, "we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007).

[13]     As mentioned, Lamm agreed to a four-year sentence in this case but argues that a suspension of some or all of the executed portion of his sentence is appropriate. "[I]t will be quite difficult for a defendant to prevail on a claim that the placement of his sentence is inappropriate." *King v. State*, 894 N.E.2d 265, 267 (Ind. Ct. App. 2008). "This is because the question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *Id.* at 268. "A defendant challenging the placement of a sentence must convince us that the given placement is itself inappropriate." *Id*.

[14]     Lamm does not argue that the nature of his offense warrants the suspension of part of his executed sentence, and, indeed, the nature of Lamm's intimidation offense in Cause No. 409 is disturbing. During an argument with Wray, he told her that, if she left, he would find her, "shoot her friends dead until he found her and then […] slowly bury her alive." Appellant's App. Vol. II p. 13. Moreover, when Wray refused to look Lamm in the eyes, he took a pair of scissors and a butane torch, heated the blades with the torch, asked Wray if she knew what an "eyeball boil" was, and told her she was about to find out, a statement Wray understood as a threat to put out her eye. Appellant's App. Vol. II p. 12. The nature of Lamm's offense does not justify a suspension of a portion of his sentence.

[15]     As for Lamm's character, he has failed to establish that it warrants a suspension of part of his sentence. Although Lamm's criminal history prior to the three cause numbers in this case was not particularly serious (consisting of two

misdemeanor convictions in 2005), his more recent criminal history is. While his prosecution for strangling and battering Wray in Cause No. 409 was pending and Lamm was released on bond, he was arrested for strangling and battering Wray again, this time when she was pregnant. These multiple offenses against Wray are troubling and becoming progressively more serious. Lamm also acknowledges a great deal of uncharged criminal conduct related to his history of illegal drug use. Lamm admitted during the presentence investigation that he had abused methamphetamine, marijuana, cocaine, Lortab, and Flexeril and to growing and selling marijuana while in the military. Lamm acknowledged having a "serious problem" with methamphetamine, using up to 3.5 grams daily and selling it to support his habit. Lamm has also been "admitted to Saul to Paul treatment program[,]" but his participation was terminated unsuccessfully. Appellant's App. Vol. II p. 18. Lamm's history of criminal conduct does not speak well of his character.

[16] Lamm contends that his guilty plea and previous military service warrant a sentence modification. We note that Lamm's guilty plea gave him a substantial benefit and was therefore almost certainly the result of a pragmatic decision. In exchange for his guilty plea, the State agreed to drop charges of Level 3 felony criminal confinement, Level 5 felony domestic battery, Level 6 felony strangulation, Class A misdemeanor domestic battery, Class A misdemeanor domestic battery, and Class B misdemeanor battery. The criminal confinement charge alone could have resulted in a sentence of up to sixteen years of incarceration. *See* Ind. Code § 35-50-2-5(b). Given the great benefit conferred

upon Lamm in exchange for his guilty plea, we cannot say that it necessarily speaks well of his character. *See, e.g.*, *Norris v. State*, 113 N.E.3d 1245, 1254 (Ind. Ct. App. 2018) ("A guilty plea is not necessarily a mitigating factor where the defendant receives substantial benefit from the plea or where evidence against the defendant is so strong that the decision to plead guilty is merely pragmatic.") (citation omitted), *trans. denied*. Moreover, while Lamm's military service is laudable, it is tainted by Lamm's admission that he dealt illegal drugs while in uniform and, in any event, does not negate the horrifying nature of his offenses and his continuing violence against Wray. We conclude that Lamm has failed to establish that his placement in DOC is inappropriate in light of the nature of his offense and his character.

[17] We affirm the judgment of the trial court.

Baker, J., and Pyle, J., concur.